James C. MATLOCK, Plaintiff–Appellee,

v.

Thomas V. BARNES, in his capacity as the Mayor of the City of Gary, et al., Defendants–Appellants.

No. 90–1047.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1991.

Decided May 15, 1991.

Joseph S. VanBokkelen, Paul A. Leonard, Jr., Goodman, Ball & VanBokkelen, Highland, Ind., for plaintiff-appellee.

Hamilton L. Carmouche, Merrillville, Ind., MacArthur Drake, Gary, Ind., for defendants-appellants.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

James Matlock sued the city of Gary, Indiana, and four of its officials, including Mayor Thomas V. Barnes, alleging that he had been transferred from his job as a legal investigator for the city's Law Department in retaliation for his support of Barnes' political enemy, former mayor Richard Hatcher. Invoking 42 U.S.C. § 1983, Matlock sought damages for violations of his First and Fourteenth Amendment rights. After a five-day trial,[1] the jury agreed with Matlock that his transfer was politically motivated and awarded him $5,307.58 in back pay and $20,000 in damages for emotional distress. Defendants appeal rulings made by the magistrate in response to their motion for summary judgment and the magistrate's refusal to enter a judgment notwithstanding the verdict. Defendants also challenge the jury's award of damages and attorney's fees.

### FACTS

James Matlock began working as a legal investigator for the Law Department of the city of Gary in January 1972. The Department employed no more than eight staff members during Matlock's tenure. Most of the staff were attorneys; the number of investigators ranged from one to three. The work in the Department consisted mainly of investigating accidents and litigating small property damage claims brought against the city. According to a job description published by the city of Gary, Matlock's duties included: taking statements from witnesses in a legible manner, taking photographs of sites being investigated and obtaining medical and administrative records when necessary. Mat-

1. The trial was before a magistrate by consent of the parties.

lock apparently performed his job well, for his superiors never complained about the quality of his work during his sixteen years in the Department.

In May 1987, Richard Hatcher, who had been Gary's mayor since 1968, was defeated by Thomas Barnes in a hard-fought Democratic primary. Because of the Democratic party's lock on Gary politics, Barnes prevailed in the general election and took office in January 1988. As part of his new administration, Barnes appointed defendant Gilbert King, Jr., as the head of the Law Department. Defendant Beulah Ware became director of the Personnel Department and defendant Richard Comer was named deputy mayor.

Matlock had campaigned for Hatcher in the primary. On April 30, 1988, Matlock attended the annual Jefferson–Jackson Day dinner in Indianapolis, an affair hosted by the Indiana State Central Committee of the Democratic Party. He escorted former mayor Hatcher, who was at that time the vice-chairman of the Jesse Jackson presidential campaign, to his seat. When Matlock turned to leave, shortly after taking Hatcher to the front row of the hall, he stopped at a table to speak to a friend. Matlock tripped over the feet of deputy mayor Comer while leaning over to shake his friend's hand. Mayor Barnes was seated immediately to Comer's right.

On May 23, 1988, Ware, the Director of Personnel, notified Matlock that he was being transferred to the Gary City Jail to become a correctional officer, or "turnkey," and that his salary would be reduced from $15,192 a year to $11,635. Matlock started as a turnkey in June, though he had no training in the supervision of prisoners. He filed suit in December 1988 against the city of Gary, Barnes, Ware and King, alleging that he had been transferred for exercising his First Amendment rights of free speech and political association. He subsequently amended his complaint to add Comer as a defendant and to sue the officials in their individual as well as official capacities.

The defendants maintained below that Matlock was not transferred for political reasons. Comer admitted in his deposition that he had seen Matlock accompanying Hatcher at the Jefferson–Jackson Day dinner and had reported his observation to King and Ware. King acknowledged that he had discussed the possibility of transferring Matlock with the Mayor after the dinner. All defendants stated, however, that Matlock was not transferred for a public display of allegiance to the former mayor and his political faction, but because he had revealed a personal loyalty to Hatcher at a time when the Department was pursuing litigation against him. The defendants believe that Matlock had to be transferred to protect the confidentiality of the Department's files.

Both parties filed for summary judgment when discovery ended. The magistrate, in a thoughtful memorandum and order, declined to enter summary judgment for either party. He noted that genuine issues of material fact existed in particular about the nature of the legal investigator position. The Supreme Court has held that "policymaking" or "confidential" employees can be fired on political grounds, see *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and the magistrate believed that he could not accurately categorize Matlock's position as a matter of law. The magistrate did grant partial summary judgment to Matlock, finding that Comer, Ware and King had participated in Matlock's firing and that their actions were politically motivated. The court did not enter summary judgment on the question of Mayor Barnes' participation or motivation.

After a five-day trial, the jury returned a verdict for Matlock. The defendants, renewing an objection they had made in their motion for summary judgment, argued that they were entitled to qualified immunity in the individual capacity suits because the state of the law on politically motivated transfers was unclear at the time of Matlock's transfer. The plaintiffs offered to dismiss the individual capacity suits and as a result judgment was entered against all defendants in their official capacities and the city of Gary. Compensatory damages

awarded by the jury totalled $25,307. The magistrate later awarded front pay in the amount of $7,500, costs of $1,354 and attorney's fees under 42 U.S.C. § 1988 of $57,675.

Defendants appeal the failure of the magistrate to enter summary judgment in their favor on the issue of whether Matlock's job was policymaking or confidential, the magistrate's partial grant of summary judgment to Matlock on the issue of the political motivation of Comer, Ware and King, and the magistrate's refusal to enter a judgment notwithstanding the verdict. Defendants also object to the amount of damages and attorney's fees awarded.

## ANALYSIS

### Whether Matlock's Job as a Legal Investigator Was a Policymaking or Confidential Position

In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, the Supreme Court held that a public employee cannot be fired because of his or her political beliefs unless political loyalty is an acceptable prerequisite for the job. In *Rutan v. Republican Party of Illinois*, —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), decided last Term, the Court held that transfers, promotions, and recalls after layoffs are governed by the same rule.

The prohibition on patronage practices is subject to an important exception. It is permissible to fire public employees who are likely to be formulating and implementing the policies of the party in power for lacking the correct political affiliation. The theory is that a newly elected administration has a legitimate interest in implementing the broad policies it was elected to implement without interference from disloyal employees. *Elrod*, 427 U.S. at 367, 96 S.Ct. at 2686. *Elrod* thus distinguishes employees who are either "policymaking" or "confidential" from non-policymaking, non-confidential employees; the former can be dismissed for their political beliefs while the latter cannot. In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) the Court moved away somewhat from the "policymaking" and "confiden-

tial" labels, holding that public employees are protected from patronage dismissals if "party affiliation is an appropriate requirement for the effective performance of the office involved." 445 U.S. at 518, 100 S.Ct. at 1295.

This Court has characterized the *Branti* test as follows:

The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking where there is room for principled disagreement on goals or their implementation.

*Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981), certiorari denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139. We also have noted that though a functional approach is now preferred to a definitional one, the descriptions "'policymaking' and 'confidential' accurately describe the vast majority of offices that fall within the realm of legitimate patronage." *Meeks v. Grimes*, 779 F.2d 417, 420 (7th Cir.1985).

Since Matlock filed his suit, defendants have staked much of their defense on their argument that the legal investigator position Matlock occupied was policymaking and confidential and therefore that they were entitled to transfer Matlock even if they were motivated by his politics. They contend that Matlock can be called a "policymaker" because he exercised a great deal of discretion in how he carried out his investigations of suits pending in the Department. In addition, they maintain that a legal investigator position is "confidential" because the investigator has unlimited access to confidential files in the Department and that Matlock's continued presence in the office at a time when litigation was pending against former mayor Hatcher presented a threat to the integrity of the Department. The magistrate rebuffed defendants' argument about Matlock's policymaking, confidential status, first when he declined to enter summary judgment for defendants and later when he refused to enter a judgment notwithstanding the verdict.

In evaluating defendants' motion for summary judgment,[2] Magistrate Rodovich properly focused on "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Tomczak v. City of Chicago*, 765 F.2d 633, 640 (7th Cir.1985), certiorari denied, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289. With respect to defendants' contention that the legal investigator position was "policymaking," he found simply that the depositions and affidavits revealed too little to make entry of summary judgment appropriate for either party. "It is impossible to determine accurately the exact nature of the duties of the investigator for the Law Department." *Matlock v. Barnes, et al.*, No. H 88–673 (N.D.Ind. 1989) (order denying defendants' motion for summary judgment and granting in part plaintiff's motion for summary judgment). On the issue of confidentiality, the magistrate noted this Court's disapproval of the notion that a fear of an employee's possible breach of confidence can as a matter of law qualify the employer for the *Elrod* exception. In *Meeks*, a panel of this Court stated:

> [I]t would cast the net of the Elrod exception too wide to allow political support to be used to extrapolate a tendency to breach a sworn duty, behave unprofessionally, or commit criminal acts.

779 F.2d at 421. The magistrate also believed that a jury might conclude from the facts that after transferring Matlock the defendants had manufactured their concern about confidentiality to justify their actions. Matlock had never breached the Department's confidentiality in his sixteen years in the office. Also, King in particular had been aware of Matlock's political allegiance since becoming head of the Department but had done nothing to remove him until the Jefferson–Jackson Day dinner.

■ The magistrate's decision not to enter summary judgment for the defendants on the issue of the legal investigator's status was correct. We review the denial of

summary judgment *de novo* and agree with the magistrate's assessment of the evidence. By its nature, the question of whether a job is policymaking or confidential is often factual. *Nekolny*, 653 F.2d at 1169. Here both sides apparently had neglected to describe in their affidavits and depositions the duties of the legal investigator. On the issue of confidentiality, a jury was entitled to weigh the credibility of defendants' proffered justification. Genuine issues of material fact persisted, and the magistrate rightly proceeded to trial.

■ Defendants' contention that they were entitled after trial to judgment on Matlock's policymaking, confidential status is likewise without merit. Defendants moved for a directed verdict after close of the plaintiff's case and renewed their motion by asking for a judgment notwithstanding the verdict after the jury decided in favor of Matlock. The jury found in a special interrogatory that Matlock did not occupy a policymaking or confidential position. We review the denial of a motion for JNOV *de novo*, asking:

> whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed.

*Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir.1985). The jury verdict was more than adequately supported by the evidence brought forth at trial, and we decline to reverse on this ground.

■■ In political patronage cases, defendants bear the burden of establishing that political affiliation is an appropriate qualification for the job from which plaintiff is ousted. *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687; *Grossart v. Dinaso*, 758 F.2d 1221, 1226 (7th Cir.1985). The public employer must demonstrate the legitimate government interest in discharging the employee which overrides the encroachment on the employee's First and Fourteenth Amendment rights. *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687. Here the defendants

---

**2.** Defendants submitted a "Motion to Dismiss and/or for Summary Judgment." The magistrate treated the motion as one for summary judgment as will this Court.

tried to qualify for the *Elrod* and *Branti* exception by showing that Matlock's job was policymaking or confidential in nature.

■ At first glance, the duties of the legal investigator seem to have been too limited to qualify Matlock as a policymaker. A job that is merely ministerial is not "policymaking." See *Thulen v. Bausman,* 930 F.2d 1209, 1213 (7th Cir.1991) (strictly menial government worker is clearly and completely protected from patronage firing). Matlock's office handled mainly small property claims against the city and accident investigations. Trial testimony established that Matlock accepted case assignments from the attorneys in the Department who supervised him, investigated claims by visiting accident sites, interviewing witnesses and taking pictures, and prepared written recommendations for the attorneys which they often adopted but were free to ignore. Matlock did not supervise anyone. He also did not have the authority to settle cases on his own. In sum, Matlock seems not to have had as much responsibility as other law enforcement personnel deemed by courts to be policymakers. See *Livas v. Petka,* 711 F.2d 798, 799–801 (7th Cir.1983) (public prosecutor); *Thulen,* 930 F.2d at 1217 (deputy sheriff); *Ness v. Marshall,* 660 F.2d 517, 522 (3rd Cir.1981) (city solicitor).

■ However, as this Court recently noted in *Hudson v. Burke,* 913 F.2d 427 (7th Cir.1990), even "investigators" can be policymakers if they provide "sufficient subjective input into policy decisions so that political affiliation was an appropriate consideration for hiring and firing." 913 F.2d at 432. *Hudson* involved clerks to the City of Chicago's Finance Committee who dealt mainly with "small issues like potholes and street lights." *Id.* The analysis in *Hudson* was not limited to considering the laundry list of plaintiffs' seemingly mundane duties. The defendants there established that partisan politics entered into many decisions of the Finance Committee, especially because it was "a powerful committee at a time of antagonism and divisive political turmoil." 913 F.2d at 434. They introduced evidence showing that the of-fice's investigators performed "politically sensitive fact-finding missions," *id.,* that they contributed to the formulation of budget proposals and bond ordinances, 913 F.2d at 432, and that political affiliation had historically played a role in hiring in the office, *id.* In effect, the evidence tended to prove that even decisions about mending potholes could be political when Chicago's Finance Committee made them.

■ Defendants here utterly failed to introduce comparable evidence about the policymaking nature of the legal investigator's job in the city of Gary Law Department. Nowhere in the transcripts is there any suggestion that the Department regarded the settlement of the claims it handled as political matters. There was no evidence that the Department made policy or set goals for the city of Gary. The defendants' witnesses testified that the Department did not hire or fire on the basis of political affiliation generally, suggesting that city officials considered jobs within the Department to be non-policymaking. Matlock himself testified that he could not have been hired for his political affiliation because at the time he applied for the job, he had none.

■ Defendants fare little better on their contention that Matlock occupied a "confidential" position. At trial, King testified that two cases were pending against former mayor Hatcher at the time Matlock escorted him to the Jefferson–Jackson Day dinner. After taking office, Mayor Barnes had sued Hatcher for allegedly removing all the Department's files when his administration departed. Also, several Hatcher appointees to the Gary Municipal Airport Authority District had sued Mayor Barnes and his administration after being terminated. King and the other defendants testified that because all employees of the Department had access to all court files, they lost confidence in Matlock's ability to safeguard the secrecy of the office upon seeing how close Matlock was to Hatcher. Defendants maintained that these facts proved the legal investigator job to be confidential within the meaning of *Elrod.*

■ Again, defendants' argument was not necessarily a losing one. Ordinarily "confidentiality," as that term is used in *Elrod,* connotes a need for political loyalty, not merely a worker's duty to keep the secrets of his or her office. This Court has expressed doubt that "any access to court records when coupled with political animosity creates a serious threat of politically motivated breaches of confidentiality." *Meeks,* 779 F.2d at 421 (court bailiff is not confidential employee merely because he has access to confidential information). Nonetheless in *Meeks* itself we recognized that there are situations, especially in small offices where constant face-to-face contact is required, in which "political animosity, while not a noble basis for discharging an employee, can in practice create a hostile work environment." *Meeks,* 779 F.2d at 423. In these cases, "it would strain credulity to read the First Amendment or *Elrod* to require an elected official to work in constant direct contact with a person viewed as a political enemy." *Id.* See also *Soderbeck v. Burnett County,* 752 F.2d 285 (7th Cir.1985) (jury question exists as to whether political affiliation is proper qualification for job as sheriff's secretary in six-person office), certiorari denied, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261. In Matlock's case, defendants could have established the confidentiality of Matlock's position by offering convincing proof of their unease about working in small quarters in direct and constant contact with Matlock, a Hatcher-backer.

The jury seems simply not to have believed defendants' professed concern about breaches of office confidentiality, however. The evidence supports their conclusion. Matlock cast doubts on defendants' supposedly grave efforts to limit access to information about the proceedings against Hatcher. The case against Hatcher regarding the missing files was not being handled by any attorney in the Department, but by outside counsel. Furthermore, the Department had taken no action to prevent other Hatcher loyalists from obtaining or disseminating confidential information regarding the case. Alton Gill, who had been Hatcher's corporation counsel, had access to the same court files Matlock did. He had entered private practice after resigning from the Department and shared office space with the outside attorney representing the city in the case against Hatcher. The city never had expressed any concern about Gill's ability to compromise the city's case. Finally, some of the evidence indicated that the Department did not even care to pursue its litigation against Hatcher, much less protect information arising from the case. The Department had been so lax in litigating the case that it was facing a motion to dismiss for failure to prosecute.

Perhaps the most influential facts were the ones directly related to Matlock and his transfer. Matlock had never before breached the security of the Department. Until he was transferred, no one in the office had ever expressed concern to him about his association with Hatcher and the possible confidentiality problems raised by that association. This was in spite of the fact that Ware and King knew of Matlock's loyalties before Matlock appeared in public as Hatcher's escort.

The jury was in the best position to assess the credibility of the defendants' arguments about the need for secrecy in the Department, and its finding that Matlock's position was non-confidential as well as non-policymaking will not be overturned. Nothing in the record demonstrates that the legal investigator position was generally one for which political affiliation is an appropriate requirement. Defendants are not entitled to a judgment notwithstanding the verdict on the basis of Matlock's status.

### Whether Matlock Was Fired for his Political Affiliation

■ A public employer can escape liability for what seems to be a politically motivated employment decision by showing that it would have reached the same employment decision even in the absence of the protected conduct. *Mt. Healthy School Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471. In other words, the public employer can

advance legitimate, non-political reasons for its decision.

Magistrate Rodovich precluded jury investigation into the motives of defendants Comer, Ware and King by awarding partial summary judgment to Matlock on the issue of whether their actions were politically motivated. Defendants argue that this question should have gone to the jury, because their affidavits raised a genuine issue of material fact as to whether Matlock was transferred merely for making a political statement or because his superiors "lost confidence" in Matlock's ability to perform his job adequately after learning that he was personally close to someone against whom the Department had litigation pending.

 While we are inclined to agree that the question of motivation, like that of the status of the legal investigator, should have been tried, we are precluded from reviewing defendants' argument. The suits against Comer, Ware and King have been rendered moot by defendants' failure to appeal successfully from the jury verdict against Barnes and the city. The only suits remaining in this case are those against the officials in their official capacities.[3] The city of Gary thus is the only defendant whose assets can be used to satisfy judgments rendered against any of the defendants. "[A] plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself," *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 because an official capacity suit "is, in all respects other than name, to be treated as a suit against the entity." *Id.* The jury found Mayor Barnes and the city of Gary liable for the politically motivated transfer of Matlock,[4] and the defendants do not successfully challenge these verdicts. This means that the city is in any case liable for the amount of the judgment award. Reversing the partial summary judgment entered against Comer, King and Ware would be pointless,[5] because further proceedings could only investigate a matter already tried: whether the city is liable for Matlock's transfer. Because any decision on our part cannot change Matlock's right to recovery or the city's liability, the issue of whether Comer, Ware and King were politically motivated in transferring Matlock is moot. See *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (federal courts cannot decide questions that cannot affect the rights of the litigants in the case before them).

The judgments entered against Comer, Ware and King are vacated and the magistrate is instructed to dismiss the suit

---

3. Defendants include in their brief an argument that they should have been granted summary judgment on grounds of qualified immunity. Defendants previously filed two interlocutory appeals raising this same issue. We consolidated the two appeals and dismissed them, finding that the dismissal of the individual capacity suits made resolution of the qualified immunity issue moot. *Matlock v. Barnes, et al.*, Nos. 89–3386 and 89–3432 (7th Cir. Jan. 9, 1990) (unpublished order dismissing consolidated interlocutory appeals). We adhere to this ruling. Now defendants make the rather novel argument that the magistrate prejudiced them by allowing them to prevail in their individual capacity suits. Defendants believe that they were entitled to a judgment absolving them of wrongdoing and that plaintiff's voluntary dismissal deprived them of this ability. Defendants might have preferred a victory on the merits rather than a victory due to plaintiff's capitulation. A win is a win, however, and defendants cannot appeal from a judgment that is not adverse.

4. Defendants halfheartedly argue that the Barnes administration had no widespread poli-

cy of transferring city employees who supported Hatcher's faction. While it is true that municipal liability can derive only from a municipality's policy or custom, see *Monell v. Department of Social Services*, 436 U.S. 658, 671, 98 S.Ct. 2018, 2026, 56 L.Ed.2d 611 liability can be imposed for a "single decision by municipal policymakers under appropriate circumstances." *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452. Thus it makes no difference that Barnes generally did not fire or transfer employees for their political affiliations. It is sufficient that he, as a decisionmaker possessing final authority to establish Gary's policy, authorized Matlock's firing.

5. Perhaps the most graphic way to illustrate the lack of interest that Comer, Ware and King personally have in the outcome of the official capacity suits is to note that their death or replacement would result merely in the substitution of their successors. *Kentucky v. Graham*, 473 U.S. at 166 n. 11, 105 S.Ct. at 3105 n. 11.

against these parties. See *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (proper disposition if case becomes moot en route to appellate court is to reverse or vacate judgment below and remand with direction to dismiss).

### Damages

Defendants believe that Matlock was not entitled to the full amount of lost wages, $5,307, because he failed to mitigate those damages. They also argue that the jury award of $20,000 for emotional distress was unsupported by the evidence.

■ The jury's judgment that Matlock was under no duty to mitigate damages is not contrary to the weight of the evidence. Defendants bore the burden of showing that Matlock failed to exercise reasonable diligence to mitigate damages and that Matlock was likely to have found comparable work. *Hanna v. American Motors Corp.*, 724 F.2d 1300 (7th Cir.1984), certiorari denied, 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821. The obligation to mitigate is largely an inquiry into "reasonableness" which is properly within the province of the jury. *Smith v. Rowe*, 761 F.2d 360, 367 (7th Cir.1985). Matlock testified that after he was involuntarily transferred, he showed up for work at the Gary jail and continued to work there 40 hours a week at the 4:00 P.M. to midnight shift. He also stated that after his transfer he performed investigatory work on a part-time basis when not working at the jail. From these facts a juror might conclude that Matlock had already done what reasonably was possible to mitigate damages. Defendants, for their part, introduced no evidence demonstrating that more effort on Matlock's part would have resulted in his finding comparable work at his old salary.

■ The $20,000 damage award for emotional distress likewise withstands the defendants' attacks. We cannot vacate an award for excessiveness unless it is "monstrously excessive" or there is "no rational connection between the evidence on damages and the verdict." *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 971

(7th Cir.1983). Also, it is necessary to consider whether the award is excessive in comparison to other awards in similar cases. *Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir.1984).

■ Defendants contend that the jury award in this case is unsupported because Matlock's direct commentary about his emotional distress was limited to his testimony that he had preexisting hypertension problems and that his new job was "too stressful" (Tr. at 196–197). They compare this case to *Nekolny*, in which this court vacated awards of $5,000 and $2,000 to two plaintiffs for mental and emotional distress on the grounds that "a single statement by a party that he was 'depressed,' 'a little despondent,' or even 'completely humiliated' * * * is not enough to establish injury" in the absence of other facts indicating emotional injury. *Nekolny*, 653 F.2d at 1172–1173.

This case is easily distinguished from *Nekolny* because Matlock introduced many facts from which the jury could gauge the emotional distress and personal indignity he suffered. The jury heard testimony about Matlock's sixteen-year tenure in the Law Department and the level of competence and independence he had attained within the office. They were then able to compare the legal investigator job with Matlock's new job in the city jail, where he was responsible for feeding and moving prisoners. The jurors were not obliged, as in *Nekolny*, to take plaintiffs' vague utterances about indignity and humiliation as gospel. They could themselves arrive at an estimation of plaintiff's loss, by comparing the circumstances of Matlock's life and work before and after his transfer.

The $20,000 award is also not excessive in comparison to awards in similar cases. In *Webb v. City of Chester*, 813 F.2d 824, 836 (7th Cir.1987), this Court found that awards in cases where plaintiff had been fired ranged from a "low of $500 to a high of over $50,000." In *Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir.1989), involving police officers transferred out of their unit to another unit within the Police

Department, we noted that though $55,000 was clearly excessive for emotional distress, a remittitur to $15,000 would be reasonable.

The jury awards with respect to back pay and emotional distress are upheld. Both are supported by the evidence and the emotional distress award is not excessive in amount.

### Attorney's Fees

Finally, defendants argue that the district court abused its discretion in awarding $57,675 in attorney's fees to Matlock's attorney under 42 U.S.C. § 1988. They believe the amount is "excessive and inordinate" (Def.Br. 43), mainly because it includes the fees attributable to work on claims on which defendants prevailed.

Under 42 U.S.C. § 1988, a plaintiff may be awarded reasonable attorney's fees as a prevailing party if he or she succeeds on "any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40. The defendants here thus cannot complain that they are being charged for the preparation and presentation of some claims which plaintiff ultimately lost, for example the claims against defendants in their individual capacities. Matlock is the prevailing party by the definition set forth in *Hensley*.

The magistrate conducted an in-depth evidentiary hearing before accepting plaintiff's fee petition. He reviewed the detailed petition, heard testimony about the reasonableness of the hourly rates of plaintiff's attorneys, considered case law on the subject of attorney's fees, and patiently heard defendants' objections. We cannot say that he abused his discretion.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed with respect to Thomas Barnes and the city of Gary. The judgments against Comer, Ware and King are vacated and the district court is directed to dismiss the suits against these three officials.