Michael **SHANAHAN**, Plaintiff,

v.

**CITY OF CHICAGO, a municipal corporation, Richard M. Daley, both individually and in his official capacity as Mayor of the City of Chicago, Raymond Orozco, both individually and in his official capacity as Fire Commissioner of the City of Chicago, and William Alletto, Defendants.**

**No. 91 C 2865.**

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1991.

James P. Chapman, Alan S. Mills, James P. Chapman and Associates, Ltd., Chicago, Ill., for plaintiff.

Mary Leone Smith, Kelly Raymond Welsh, Nancy L. Van Allen, City of Chicago, Law Dept., Corp. Counsel, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the defendants' motion to dismiss. For the following reasons, the motion is denied.[1]

### FACTS

The plaintiff, Michael Shanahan ("Shanahan"), was demoted on December 15, 1990 from the position of director of the Department of Apparatus Maintenance, Repair and Supply within the Chicago Fire Department, his job since 1983, to the position of commander of a firefighting company.[2] The demotion, which reduced Shanahan's annual salary from approximately $75,000 to approximately $48,000, allegedly resulted from his refusal to hire and promote supporters of Chicago Mayor Richard M. Daley ("Daley"). Shanahan's refusal was based on concern for other job applicants' rights and safety concerns.

Shortly after Daley's inauguration in 1989, Shanahan was contacted by Michael Broderick, an employee in Daley's patronage office, and told that Shanahan was required to notify the patronage office of all vacancies in Shanahan's department. The patronage office would then provide a list of Daley supporters from which Shanahan would be required to fill the vacancies. Shanahan, however, refused to notify the patronage office of vacancies and continued to fill all vacancies with the best qualified applicants based on Fire Department procedures. In October 1990, Fire Commissioner Raymond Orozco ("Orozco") and Deputy Commissioner William Alletto ("Alletto"), Shanahan's immediate superior, told Shanahan that they had been ordered by Daley to request Shanahan's resignation

---

1. The defendants' reply brief was due initially on October 11, 1991. The deadline was later extended at the defendants' request to November 1. The brief, however, remained unfiled as of November 12. Therefore only the defendants' opening brief and the plaintiff's brief in response have been considered in deciding the motion to dismiss.

2. The facts set forth herein are taken from the plaintiff's complaint.

for "political" reasons. Orozco and Alletto, however, gave Shanahan time to ask his ward committeeman to intervene on his behalf with Daley. Nonetheless, Shanahan neither sought such political intervention nor resigned.

Shanahan was ordered by Alletto to take accumulated leave between October 15 and December 7, 1990. During that period, Shanahan was told to report to the Fire Department Training Academy on December 7 to begin retraining. Around December 15, 1990, Shanahan was told that he would be assigned temporarily as a fire fighting company commander, and since then has worked in that capacity. Shanahan never received formal notice of his demotion, even though written notice is required by Fire Department practice.

Shanahan's complaint, filed on May 10, 1991, contains two counts, one count under 42 U.S.C. § 1983 alleging that his demotion violated his rights under the First and Fourteenth Amendments (U.S. Const., amends. I and XIV) and another count alleging violation of the consent decree entered in *Shakman v. Democratic Org. of Cook County*, 481 F.Supp. 1315, 1356–59 (N.D.Ill.1979) ("*Shakman* Decree").

## DISCUSSION

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe ex rel. Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). However, the court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir. 1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Vil-* *lage Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

The defendants contend that Shanahan's former position, Director of Apparatus Maintenance, Repair and Supply, is exempt from the protection of the *Shakman* Decree under its terms, that plaintiff's *Shakman* claim is time-barred, that defendants Daley and Orozco are entitled to qualified immunity, and that plaintiff has failed to plead a municipal policy, custom or practice sufficient to impose liability upon the city under § 1983. The court will deal with each argument in turn.

■ The *Shakman* Decree includes provisions enjoining the City of Chicago and its mayor from:

(1) conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor.

. . . .

(3) knowingly, inducing, aiding, abetting, participating in, cooperating with or encouraging the commission of any act which is proscribed by this paragraph E, or threatening to commit any such act.

*Shakman*, 481 F.Supp. at 1358 (appendix paras. E.(1) and (3)). Shanahan alleges that he was demoted because he refused to aid, abet or participate in an alleged scheme to impose a political loyalty test for all jobs in Shanahan's department. Such a scheme would violate the *Shakman* Decree.

The defendants maintain, however, that Shanahan is not the proper person to complain because his former job involved policy making to an extent sufficient to bring it outside the protection of *Shakman* and the First Amendment. The test is essentially "whether the hiring authority can demonstrate that party affiliation is an appropri-

ate requirement for the effective performance of the public office involved." *Tomczak v. City of Chicago*, 765 F.2d 633, 640 (7th Cir.) (quoting *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980)), *cert. denied*, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985); *see also Matlock v. Barnes*, 932 F.2d 658, 662 (7th Cir.) (discussing *Branti* and related tests), *cert. denied*, —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991). Shanahan contends in response that political loyalty is not a legitimate consideration for his former position, and that even if it was, that issue is irrelevant because he was demoted for failing to allow political loyalty to become a factor in hiring for positions that clearly are protected under *Shakman* and the First Amendment. In other words, Shanahan claims he is an "indirect" or "secondary" victim of the defendants' alleged scheme.

Nevertheless, whether Shanahan's former position is exempt from *Shakman* and the First Amendment is a factual question that cannot be decided on a motion to dismiss. *See Matlock*, 932 F.2d at 663 (finding denial of summary judgment proper on political loyalty issue). Moreover, the alleged indirectness of Shanahan's injury would not require dismissal even if the court could find that Shanahan's former position was outside the *Shakman* /First Amendment shield. To the extent Shanahan is asserting the rights of third parties who may have lost jobs or been unable to obtain jobs in Shanahan's former department because of the alleged political hiring scheme, the complaint is not necessarily deficient. "When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights." *Shakman v. Dunne*, 829 F.2d 1387, 1396 (7th Cir.1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975)), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988).

A common problem in indirect injury cases, attenuated or uncertain causation, is not present under the facts alleged in Shanahan's complaint. *See id.* at 1396–97. Shanahan alleges a direct injury to himself on the basis of a scheme to impose a political hiring test upon others. The defendants allegedly inflicted the injury themselves upon Shanahan, with no independent intervening actors. The complaint therefore adequately alleges violations of the *Shakman* Decree and the First Amendment.

■ Regarding the timeliness issue, both Shanahan and the defendants agree that claims under the *Shakman* Decree are subject to the 180–day limitations period for actions under Title VII, 42 U.S.C. § 2000e–5(e). *Smith v. City of Chicago*, 769 F.2d 408, 413 (7th Cir.1985). The period begins running when the alleged illegal employment practice occurred, although equitable tolling can delay the beginning of the period until facts become available that would place a reasonably prudent person on notice that their rights have been violated. *Brennan v. Daley*, 929 F.2d 346, 349 (7th Cir.1991). Shanahan alleges that he never received formal notice of his demotion, but learned of it when he was told around December 15, 1990 of his reassignment. A short time later, when he received his first post-reassignment paycheck, he learned of the substantial pay cut. Even assuming that Shanahan should have known of his demotion when he was first told in early December to report for retraining, Shanahan's action was timely. It was filed 160 days after December 1, 1990.

The defendants argue, however, that the limitations period began to run in early October 1990, when Shanahan was allegedly told that Daley wanted him to resign for political reasons. Defendants rely on *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), in which the Court held that denial of tenure to a college professor began the Title VII limitations period for him, rather than the subsequent date his employment ended. No action, however, was taken against Shanahan in October 1990; he al-

leges that he was merely told then that an action might be taken against him unless he sought a political accommodation. Unlike the professor in *Ricks,* Shanahan allegedly suffered no definite injury until his demotion took effect. On the present record, Shanahan's *Shakman* claim is not clearly time-barred.

■ Moving on to the qualified immunity issue, the court finds that defendants Daley and Orozco are not entitled to dismissal on that basis at this stage of the proceedings. Daley and Orozco argue that qualified immunity shields them from liability unless it was clearly established at the time of Shanahan's demotion that he could not be demoted for political reasons. *Upton v. Thompson,* 930 F.2d 1209, 1211–12 (7th Cir.1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The 1979 *Shakman* Decree and subsequent case law on the subject have clearly established the illegality of politically motivated firings of public employees. *See, e.g., Pieczynski v. Duffy,* 875 F.2d 1331, 1333 (7th Cir.1989), and cases cited therein. Moreover, roughly six months before Shanahan's demotion, the Supreme Court broadened the ban to include "promotion, transfer, recall, and hiring decisions." *Rutan v. Republican Party,* —— U.S. ——, 110 S.Ct. 2729, 2739, 111 L.Ed.2d 52 (1990). It remains in dispute, however, whether Shanahan's former position falls within the ban, and if so, whether defendants should have known that at the time of the demotion. *See Upton,* 930 F.2d at 1212–13.

Consideration of whether Shanahan can recover for a scheme to infringe the *Shakman*/First Amendment rights of potential employees in his former department further complicates the issue. As discussed above, however, the indirectness of Shanahan's claim is not necessarily a problem for him. The qualified immunity question becomes whether Daley and Orozco should have known that they could not demote Shanahan as part of an effort to politicize other positions. At this stage, the court cannot answer that question in Daley and Orozco's favor.

■ Finally, the court finds that Shanahan has sufficiently pled a municipal liability claim under § 1983 against the city and the individual defendants in their official capacities. Municipal liability under § 1983 requires the alleged constitutional violation to have resulted from a municipal policy or custom. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (plurality opinion citing *Monell v. New York City Dept. of Social Serv.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978)). Shanahan is alleging that the city engaged in a policy, directed by the mayor, to impose a political loyalty test for city jobs. Regardless of any official city policies set forth in statutes, ordinances or consent decrees banning political hiring, the city could have engaged in an actual contrary policy that might expose it to liability. Shanahan's municipal liability allegations, including the official capacity allegations against defendants Daley and Orozco, are therefore sufficient to withstand a motion to dismiss.

The court also notes that the individual defendants may face personal liability under § 1983 even if they are held to have acted in their official capacities. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

## CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss is denied in its entirety.

IT IS SO ORDERED.