**E. Irene WRIGLEY, Plaintiff–Appellee,**

**v.**

**Basil G. GREANIAS, Individually and as State's Attorney in and for Macon County, Illinois, Defendant–Appellant.**

**No. 87–1623.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1987.

Decided March 22, 1988.

Rehearing Denied April 13, 1988.

Edward Booth, Greanies & Booth, Decatur, Ill., for defendant-appellant.

Mitchell Schick, Harlan Heller, Ltd., Mattoon, Ill., for plaintiff-appellee.

Before CUMMINGS, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

The defendant-appellant, Basil Greanias, appeals from an order of the district court denying him qualified immunity. For the following reasons, we affirm that order.

## I

## BACKGROUND

### A. *Facts*

In the November 1980 election for State's Attorney of Macon County, Illinois, Basil G. Greanias, the Democratic candidate, defeated Robert Wrigley, the Republican candidate. Prior to the 1980 election, E. Irene Wrigley, the mother of Robert Wrigley, was chief secretary for the then incumbent State's Attorney, Patrick Walsh, a Republican who had not run for reelection. Mrs. Wrigley had been employed by Macon County since 1970 in numerous positions. She became chief secretary in 1978. Shortly after the 1980 election, Mr. Greanias terminated Mrs. Wrigley's employment. In a letter, Mr. Greanias advised Mrs. Wrigley that he considered her position to be "one involved in the policies of the office, and one which requires a close rapport" with the State's Attorney. R. 27 (letter attached to affidavit of Irene Wrigley). Mr. Greanias did not disparage Mrs. Wrigley's work performance in any manner. Indeed, he stated in the letter that "[i]t has been my observation and it is generally known that you are [a] capable,

hardworking and well-trained legal secretary." *Id.* Upon being fired, Mrs. Wrigley filed the present lawsuit under 42 U.S.C. § 1983. She sought damages on the ground that her discharge was constitutionally improper because it was based solely on her political affiliation with the Republican party.[1]

### B. *Procedural History*

This is the third motion for summary judgment filed by the defendant, Mr. Greanias, in this lawsuit. Mr. Greanias first filed a motion for summary judgment in which he asserted that he was entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which the district court did not act on until the day of trial. R. 17. On the morning of trial, the parties met with the district judge in his chambers. At this time, the judge cancelled the trial on his own motion because he believed that the question of whether the plaintiff's position was a protected one under the Constitution was one of law for the court rather than the jury to decide. Accordingly, the district judge ordered the defendant to file a motion for summary judgment on the question of whether the plaintiff's position was constitutionally protected. At the same time, the district judge denied without opinion the defendant's previously filed motion for summary judgment based on the qualified immunity defense. *See Wrigley v. Greanias*, No. 86-2101, docket order (C.D.Ill. Mar. 12, 1984).

The parties then filed cross-motions for summary judgment on the question of whether the plaintiff's position was constitutionally protected. R. 20, 25. After reviewing the various affidavits and depositions submitted by both sides, the district court concluded that the termination was unquestionably politically motivated.[2] *Wrigley v. Greanias*, No. 82-3109, order at 2 (C.D.Ill. Dec. 5, 1984); R. 38 at 2. How-

---

1. Mrs. Wrigley also asserted that her constitutional right to familial association had been violated. This claim was apparently premised on the due process clause of the fourteenth amendment. *See infra* note 3.

2. The defendant does not dispute this finding. *See* Appellant's Br. at 15–16.

ever, the court went on to find that Mrs. Wrigley's position was one that "facilitates the policy making [of the State's Attorney's office] and administrates [sic] its creation." *Id.* at 6. Therefore, the court held that the termination did not, as a matter of law, violate any of the plaintiff's constitutionally protected rights, and it granted the defendant's motion for summary judgment.

The plaintiff appealed from the district court's order granting the defendant's second motion for summary judgment. In an unpublished order, this court reversed. This court held that the district court erred in holding, as a matter of law, that Mrs. Wrigley was a confidential employee. *Wrigley v. Greanias*, No. 85–1206, order (7th Cir. Mar. 3, 1986) [787 F.2d 595 (table) ] [hereinafter Order of Mar. 3, 1986]; R. 47. In evaluating the factual evidence, the district court had erroneously credited Mr. Greanias' rather than Mrs. Wrigley's version of the chief secretary's job description. Such judicial weighing of the evidence, the court noted, is impermissible on a motion for summary judgment. *Id.* at 6. In view of the conflicting evidence submitted by the parties and the inferences which could be drawn therefrom, the court concluded that a material issue of fact remained as to whether Mrs. Wrigley was a confidential employee who could be discharged for political reasons. *Id.*

Mr. Greanias then filed his third motion for summary judgment. In this motion, he raised the issue of qualified immunity for a second time. Because the court had not given a reasoned opinion for its earlier decision denying the defendant's first motion seeking summary judgment on grounds of qualified immunity, the district court readdressed the issue. *Wrigley v. Greanias*, No. 86–2101, order at 2 (C.D.Ill. Mar. 20, 1987) [hereinafter Order of Mar. 20, 1987]; R.61 at 2.

### C. *Opinion of the District Court*

On the authority of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the district court determined that the law surrounding politically motivated firings was settled and clearly established at the time of the plaintiff's discharge. Order of Mar. 20, 1987 at 4. Consequently, the court held that the defendant was not entitled to qualified immunity under the *Harlow* doctrine. The court determined that the only uncertainty in the case involved whether the plaintiff was a confidential employee whose party affiliation was an appropriate requirement for the effective performance of her job, and who thus could be terminated under *Branti* without violating the Constitution. *Id.* at 5. It had already been decided on appeal that this uncertainty constituted a disputed question of fact which should be resolved at trial by the jury. *Id.* Accordingly, the court denied the defendant's motion for summary judgment.[3] The defendant now appeals from this order of the district court.

## II

## DISCUSSION

The standard for determining when a public official is entitled to qualified immunity is set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There, the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

---

**3.** The district court granted the defendant's motion for summary judgment insofar as it related to the plaintiff's claim against the defendant based on her due process right to familial association. *Wrigley v. Greanias*, No. 86–2101, order at 5–7 (C.D.Ill. Mar. 20, 1987); R.61 at 5–7. The court reasoned that, regardless of whether the plaintiff's right to familial association had in fact been infringed in this case, the majority of the cases dealing with this right had been decided since 1980. As such, the court concluded, it could not be said that the law surrounding rights to familial association was clearly established in November of 1980 when Mrs. Wrigley was fired. *Id.* at 6–7. Mrs. Wrigley does not challenge this portion of the district court's order on appeal.

After the district court ruled in this case, the Supreme Court refined the *Harlow* formula by emphasizing that the right allegedly violated may not be asserted at any level of generality. Rather,

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 532 (1987) (citation omitted).

What is important, in the final analysis, is "whether the legal norms governing [the government official's] behavior were clearly established at the time of the challenged actions." *Wade v. Hegner*, 804 F.2d 67, 71 (7th Cir.1986) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). We often refer to closely analogous case law, decided before the public official acted or failed to act, to determine whether such legal norms existed at the pertinent time. *Kompare v. Stein*, 801 F.2d 883, 887 (7th Cir.1986); *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir.1985), *cert. denied*, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). Of course, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...." *Anderson*, 107 S.Ct. at 3039. However, it must be "sufficiently clear that a reasonable official would understand that what he is doing violates" such a clearly established right. *Id.*

The district court was certainly correct on one level of generality when it stated that "the law surrounding politically motivated firings was settled and clearly established at the time of the plaintiff's discharge." Order of Mar. 20, 1987 at 4.

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), establish that the first and the fourteenth amendments protect public employees from being discharged solely because of their political beliefs and affiliations unless "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295. However, the inquiry does not end here. Mr. Greanias would be entitled to qualified immunity if, at the time he acted, the law did not clearly establish that a state's attorney was prevented from discharging someone holding *this particular position*.

In defining the position, we must keep in mind that "[t]here is no question that a new officeholder can revamp the organization he controls and convert a ministerial position into one closer to the core of the policymaking process." *Meeks v. Grimes*, 779 F.2d 417, 419 n. 1 (7th Cir.1985). Moreover, if an employee "performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance." *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985).

However, even when assessed against these principles, we believe that the district court correctly concluded that summary judgment could not be granted here. As the district court noted, and as another panel of this court noted during the earlier appeal, the record reflects a factual dispute between the parties as to the nature of the job in question. As our brothers noted during their earlier review of the record, there is indeed a sharp disagreement between the parties as to the responsibilities of the post. Moreover, this disagreement includes issues of credibility as to whether Mr. Greanias did in fact intend to transform the position from one of a general administrative/clerical nature to one of a confidential nature. In the earlier appeal,

the panel summarized this disagreement as follows:

Regarding the confidential employee determination which necessarily must focus on the nature of the employee's responsibilities, defendant Greanias related in his affidavit that he retained his predecessor's staff of seven assistant state's attorneys, one paralegal, one investigator, five staff secretaries and two others, with the exception of the termination of Wrigley and the resignation of one staff secretary. The staff secretaries' salaries were approximately 55% of the salary received by Wrigley. When he was previously the State's Attorney from 1960 to 1976, Greanias retained the chief secretary, Mrs. Foster, of his Republican predecessor. Greanias characterized Mrs. Foster as his personal secretary with the following duties: "she handled all my correspondence; she kept my calendar and appointment book; she screened my phone calls and office visitors; she served as my liasion [sic] with county officers, the County Board, the Macon County Sheriff's office and the Decatur Police Department." She also administered the non-attorney portion of the State's Attorney's office and met with Greanias on nearly a daily basis about office administration and problems. Mrs. Foster also trained and supervised all the secretaries and supervised the non-attorney staff in their dealings with the public. Equipping the staff to provide intelligent, courteous and helpful responses to inquiries from the public was deemed vital by Greanias to the administration and public image of the office.

Mrs. Wrigley assumed the chief secretary's position after Mrs. Foster's retirement in 1978. After his 1980 election, Greanias "wanted [his] chief secretary to have substantially the same duties and responsibilities as Mrs. Foster had in [his] prior sixteen years in office. [He] did not want Irene Wrigley in that position, and honestly did not feel she would want the position under the circumstances." Greanias concluded his affidavit by stating "that the successful administra-

tion of [his] office would depend to a marked degree on the skill and loyalty with which [the] duties [of his chief secretary] were carried out. [Additionally, he] would be working very closely and relying very heavily on a day-to-day basis upon [his] chief secretary and [he] needed a person in that job in whom [he] could confide and upon whose loyalty [he] could depend."

The job descriptions given by Wrigley's predecessor and successor do not contradict, nor do they wholly support, Greanias' description of the position. For example, neither mentioned contact with the public and its importance to the State's Attorney's office.

Wrigley's characterization of the chief secretary's position, supported by various affidavits and depositions of former State's Attorney personnel, differs from Greanias'. While Wrigley concedes that the position was supervisory in nature, most of her time was spent preparing juvenile, nonsupport, and mental incompetency petitions for an Assistant State's Attorney. She also took dictation from all the attorneys in the office including Greanias' predecessor. Two affidavits from persons employed between 1979 and 1983 were submitted regarding the nature of the chief secretary's job. A staff secretary, Bramhall, stated that she typed Greanias' personal correspondence, office dictation, and documents for submission to the County Board. She also stated that the incoming telephone calls were answered by the receptionist and transferred directly to the attorney, not the attorney's secretary. An Assistant State's Attorney who had occasion to observe both Wrigley and her successor stated that the staff secretaries prepared Greanias' personal correspondence, pleadings, and dictation while Wrigley's successor did not handle personal secretarial work for Greanias except for some assistance on minor budgetary matters and the completion of daily police report logs.

Order of Mar. 3, 1986 at 4–5.

Moreover, Mr. Greanias' claim of qualified immunity clearly is premised on acceptance of his view of the position's re-

sponsibilities. He does not contend that, even if Mrs. Wrigley's view of the facts is correct, the state of the law was such that he had reasonable grounds to believe that he could discharge her for political reasons. As the Supreme Court noted in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985):

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions....

*Id.* at 528, 105 S.Ct. at 2816. The Court continued in the accompanying footnote:

> We emphasize at this point that the appealable issue is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law.

*Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9.

Finally, we stress that our holding today intimates no view with respect to the merits of this litigation. We simply affirm the holding of the district court that, on this record, summary judgment cannot be granted.

AFFIRMED.