**Michael BICANIC, Plaintiff–Appellant,**

**v.**

**Thomas M. McDERMOTT, Individually and as the Mayor of the City of Hammond, Indiana, et al., Defendants–Appellees.**

No. 88–2147.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1989.

Decided Jan. 31, 1989.

Michael C. Adley, Hammond, Ind., for plaintiff-appellant.

William J. Moran, Highland, Ind., for defendants-appellees.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

We must decide a case that has visited too many courts already. At the end of 1983 the City of Hammond, Indiana, fired Michael Bicanic, its Administrator of Parks and Recreation. He filed suit in August 1984 in the Circuit Court of Lake County, Indiana, contending that the discharge was politically motivated and violated the first amendment to the Constitution, applicable to the states through the fourteenth and implemented by 42 U.S.C. § 1983. The complaint also presented claims based on state law. Concerned that things might not come out to his liking in state court, Bicanic filed this identical action in federal court in January 1986. Bicanic's lawyer (who no longer represents him) did not tell the federal judge that the same claims had been pending in state court for almost two years; neither did the defendants.

Discovery proceeded in both judicial systems. In January 1987 the defendants moved for summary judgment in the federal case, again omitting to mention the state case. Briefing and argument followed, during which the federal judge learned about the state case. Meanwhile the state case went to trial. On January 28, 1988, the jury returned a verdict in Bicanic's favor. No one told the federal judge. The defendants filed a post-judgment motion, asking the court to dismiss Bicanic's complaint because he had not filed a notice of tort claim with the City. The judge did so on May 6, 1988, on the authority of *Werblo v. Hamilton Heights School Corp.*, 519 N.E.2d 185 (Ind.App. 1st Dist.1988), and *City of Gary v. Kellogg*, 519 N.E.2d 570 (Ind.App. 3d Dist.1988), decided in Febru-

ary. The defendants moved to "dismiss" the federal complaint on the basis of this decision. The district judge ignored this motion and on May 23, 1988, released an opinion—doubtless written in large measure before the motion arrived—granting summary judgment on the merits in defendants' favor on the constitutional claim and relinquishing pendent jurisdiction of the claims based on state law.

While the parties briefed Bicanic's federal appeal, the worm turned in state court. *Felder v. Casey,* —— U.S. ——, 108 S.Ct. 2302, 101 L.Ed.2d 123, decided in June 1988, held that states may not make a notice-of-claim form a condition of § 1983 suits. The Court of Appeals of Indiana then summarily reversed the order dismissing the suit, remanding so that the trial judge could "consider and rule on the other errors set out in the defendants' motion". So far as we can tell, the state courts are unaware of the federal litigation. (Counsel for the City informed us at oral argument that neither side had notified them of the federal case.) The Circuit Court of Lake County has yet to consider the defendants' remaining arguments—which has not prevented Bicanic from arguing on appeal that we should give preclusive force to the verdict in his favor, on the assumption that the Circuit Court will reject the City's remaining arguments.

One judicial system or another has wasted its time. A single adjudication is sufficient; courts are hard pressed to deliver even that much. Duplication of effort on one dispute means that less time remains to give other litigants their first hearing. Had the district judge known of the state case, under way for 18 months before the federal filing, he would have stayed proceedings to await its outcome. As things happened, our case appears to have been caught in a transition between judges. The judge who ultimately granted summary judgment joined the federal bench in March 1988 and may not have had access to the transcripts of arguments in 1987 during which counsel informed his predecessor about the state case.

What's done is done, however. The state court rendered judgment in January 1988, but Bicanic did not then dismiss the federal complaint or plead the state judgment as preclusive. The City attempted to rely on the state's decision in May 1988, but the judgment of May 1988 it has no longer. Bicanic cannot rely on the current state of things—not only because he did not raise the subject in the district court but also because the state court has not re-entered judgment on the jury's verdict and may never do so. The only judgment outstanding at the moment is the one entered by the district court, so we must resolve the appeal on the merits.

■ The district judge concluded that Bicanic held a politically sensitive position and therefore could be fired for political reasons. See *Branti v. Finkel,* 445 U.S. 507, 517–20, 100 S.Ct. 1287, 1294–96, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.1985); *Lindahl v. Bartolomei,* 618 F.Supp. 981, 987 (N.D.Ind.1985). After his appointment as Administrator in 1981, Bicanic organized and coordinated the park and recreation program for both the City and its school system. He prepared budgets. After interviewing candidates for employment, he recommended who should be hired. He negotiated and signed contracts for the construction of a new civic center and all other contracts and leases executed by the Park and Recreation Commission, a five-member board with formal powers over these endeavors.

The fall of 1983 saw a mayoral election. Thomas M. McDermott won, replacing Edward J. Raskosky, who had held the office the preceding eight years. McDermott sent Bicanic a letter as "mayor-elect" discharging him effective the last day of Raskosky's term. Bicanic says that the dismissal was politically inspired; the City contends that the dismissal was precipitated by Bicanic's indisposition during 1983 (he concedes that he did not come to work for several months). The City maintains that while on sick leave from his job as Administrator, Bicanic was working full time for

Superior Rigging and Erecting Co. of Elkhart, Indiana, which Bicanic denies. The district court concluded that this dispute is not material to the outcome, because the Administrator's job is one in which "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295. That means a job in which there may be "principled disagreement on goals or their implementation", *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981). The political officials must be able to count on the support of those who prepare budgets, negotiate and sign contracts, and generally run the show at a substantial component of the government. The Commission had the last formal word on some of these subjects, but members of the President's cabinet may be political appointees notwithstanding their formally subordinate status on the organization chart of the executive branch; so too with responsible subordinates in the City of Hammond. See *Tomczak*, 765 F.2d at 641–43; *Nekolny*, 653 F.2d at 1170.

Bicanic all but concedes this but maintains that before his discharge he was stripped of important duties. His job no longer corresponded to his title, he submits, and once he lost his discretionary tasks the City lost the ability to sack him on political grounds. Bicanic's affidavit states:

> When I was originally hired as Administrator, I was treated as a department head and had the authority to organize, plan, and coordinate the Park and Recreation Program for the Civil City and the School City. However, these duties were withdrawn from me and I did not exercisee [sic] such authority during the year 1983.... I was not even permitted to express my opinions on any occasions.

If this creates a material dispute about the nature of Bicanic's duties, summary judgment is inappropriate. *Wrigley v. Greanias*, 842 F.2d 955 (7th Cir.1988).

 Bicanic does not tell us why he lost his principal duties. If the City of Hammond reorganized its parks department so that all of Bicanic's duties were distributed elsewhere, then the City had no need of his services no matter what his politics. A political appointee does not acquire tenure as a civil servant when the tasks of the job are abolished or redistributed—for the abolition of a political job is itself a political deed, no more actionable than firing the holder of a job whose duties are unchanged. If, instead, Hammond wants the Administrator to hold discretionary powers but withdrew them *because Bicanic was the incumbent*—perhaps because he did not come to work, perhaps because he was deemed politically untrustworthy—again the discharge gives no cause for complaint. It cannot be that if a mayor so distrusts an appointee that he first strips away the person's duties and then, when the appointee does not get the message, pulls the rug out from under him, the Constitution treats the initial step (deprivation of responsibility) as interdicting the second (discharge). See also *Tomczak*, 765 F.2d at 640, holding that the powers of the office, not the tasks of its occupant, determine whether the occupant may be dismissed on political grounds. The erosion of power and the fall of the ax may be two symptoms of the same dissatisfaction; one does not prevent the other. So it does not make a difference whether the City eliminated the job (and then Bicanic) or instead wanted a potent Administrator but not Bicanic; in either case the change in duties would not give tenure to a political official.

Bicanic the deponent was more forthcoming than Bicanic the affiant. Part of a deposition taken during the state litigation and attached to the defendants' motion for summary judgment reads:

Q. ... Do you consider yourself a political opponent of all the defendants?

A. Yes.

 . . . . .

Q. You would consider, then, all the Park Board members prior to January of '84 and the—

A. Especially Ray Kenda and Bill Irby. [Defendants Ray Kenda and E. William Irby, two members of the

Board of Parks and Recreation.] The other two [members at the time] were—went along with those two....

. . . . .

A. Well, I feel as administrator, I was denied making certain decisions that the Board members, Ray Kenda and Bill Irby had taken upon themselves to serve as administrators. There wasn't anyone I could turn to. I couldn't go to the Board to seek aid, I couldn't go to the mayor [Raskosky].

. . . . .

Q. [Your position is that] certain Board members, I believe you named Mr. Irby and Mr. Kenda, either interfered or usurped decisions that you felt should be—

A. You're absolutely right.

. . . . .

A. ... [N]ow, we had a meeting with Ray Kenda, Bill Irby and—what is it—Steve Goot, the attorney, and Mayor McDermott. Well, he was Bob McDermott at that time or whatever. On December the 1st [1983] we met in the board room and at that time Kenda and Irby had given the mayor elect a snow job, I would say, and at that meeting McDermott had mentioned that I would be relieved as administrator of Parks and Recreation....

This deposition narrates a political struggle: Bicanic against his political opponents Irby and Kenda, who consolidated power on the board, took away duties Bicanic thought were rightfully his, and persuaded the incoming Mayor to get rid of him. Bicanic's duties, their erosion, and the denouement were all political in nature.

The first amendment does not forbid such a sequence under the approach of *Elrod* and *Branti*. Those the people elect are entitled to employ others who hold their confidence; they must do so if they are to carry out the programs they promised to pursue. Bicanic wanted both to exercise discretionary powers of government and to be insulated from politics. Such an approach would put the first amendment athwart the ability of the people to have their way through elections.

AFFIRMED.