**William E. FELTON, Plaintiff,**

v.

**BOARD OF COMMISSIONERS OF GREENE COUNTY, Lee J. Stone, and Robert Crowe, Defendants.**

**No. TH 89–263–C.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

July 25, 1991.

Terry L. Monday, John H. Haskin & Associates, Indianapolis, Ind., for plaintiff.

Marilyn A. Hartman, Bloomfield, Ind., James S. Stephenson, Stephenson and Kurnik, Indianapolis, Ind., for defendants.

## ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND FOR DISMISSAL

TINDER, District Judge.

### I. *Overview*

Elections sometimes bring about change. After the Supreme Court's decisions in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49· L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and most recently in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), elections frequently spawn lawsuits. As a result of these cases, the ability of a government entity to accomplish politically motivated hirings and firings is now quite limited. For as the Supreme Court has said, "[t]o the victor belong only those spoils that may be constitutionally obtained." *Rutan*, 110 S.Ct. at 2731.

In Greene County, Indiana, the November, 1988 election changed the makeup of the Board of County Commissioners. Two Democrats were elected to the County's three person Board. The Democrats' election to the Board changed the majority of the Board from Republican to Democrat. Late in 1988 and early in 1989 the newly constituted Board terminated the contracts of some County employees and failed to renew the contracts of some others. Several lawsuits followed.

The plaintiff, William Felton, was an individual hired by a prior Republican County Board of Commissioners. His employment relationship with the County was not renewed in 1989. Mr. Felton was appointed

on January 1, 1987, *see* Dep. Exh. FF,[1] and reappointed on January 4, 1988, *see* Dep. Exh. EE, as the County's veterans' service officer,[2] and he believes that the failure to renew his appointment to that position in 1989 "was based upon political considerations." Plaintiff's Statement of Genuine Issues at 2.

During his tenure as the County's veterans' service officer Mr. Felton ran the County's Veterans' Service Office and managed the office's two additional employees. Mr. Felton annually submitted a budget for his office to the County Board of Commissioners. In addition, Mr. Felton was required to know the law with respect to veterans' affairs and to advise, counsel and provide information regarding veterans' issues to veterans and their family members. It appears that the Board attempted to exercise only minimal oversight over Felton during the time that he was employed as veterans' service officer.

On January 6, 1987 the Board passed Ordinance 1987–2 which provided in part that:

> Every person hired to work for the County, except superintendents, shall be subject to [a] ninety (90) day probationary period. If a probationary employee is not terminated during said probationary period, the employee shall, on the ninety-second (92) day of employment become a permanent employee and shall thereafter be terminated only for just cause, except that the superintendent shall be employed at will by the Board regardless of length of employment.

This ordinance was repealed by the Board on May 4, 1987.

While he stated in his deposition that he did not know if he was required to do so, in late 1988 Mr. Felton submitted a memo to the Board requesting that he be reappointed as the County's veterans' service officer for the upcoming year. The Board customarily reappointed Mr. Felton at the Board's first meeting in January.

Plaintiff claims both that he had a protectible property interest in his job as the County's veterans' service officer that entitled him to notice and a hearing before termination and that he was discharged due to his political affiliation in violation of his first amendment rights to freedom of speech and association.

In their motion for summary judgment defendants argue that plaintiff had no protectible interest in his job, that even if plaintiff was fired for a political reason his firing was justified because political affiliation was an appropriate requirement for his job, and that the county commissioners whom plaintiff has sued in their individual capacities are protected by the doctrine of qualified immunity. In addition, defendant has filed a separate motion to dismiss plaintiff's individual capacity claim against former commissioner Lee Joe Stone.

II. *Defendants' Motions for Summary Judgment*

A. Mr. Felton's Property Interest

In Count II of his amended complaint Mr. Felton claims that he had a due process right to notice and a hearing before he was terminated from his job as veterans' service officer. The right to notice and an opportunity to be heard is the touchstone of constitutional due process. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) ("due process ... held to require ... notice and hearing"); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' ") (citation omitted). How-

---

**1.** Mr. Felton was employed by the County prior to his January 1, 1987 appointment, however, those prior appointments do not appear to be relevant to this motion for summary judgment.

**2.** The parties refer to Mr. Felton's former position as "veterans service officer," however, other documents refer to the "County Veterans Affairs Department." Also, the Indiana Code sections discussing such county offices refer to "veterans' affairs." For simplicity and to avoid confusion this court will refer to Mr. Felton's former position as "veterans' service officer" and to the office which he ran as "the Greene County Veterans' Service Office" or "the Veterans' Service Office."

ever, these procedural protections are only due if there has been a deprivation of a liberty or a property interest by the state.

■ Mr. Felton does not contend that he was deprived of a liberty interest by the action of the Greene County Commissioners. He does contend that he had a property interest in continued employment by the County. Property interests are created by state law. As the Supreme Court said in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

The concept of property that receives due process protection is broad. "[T]he types of interests protected as 'property' are varied and as often as not, intangible, relating 'to the whole domain of social and economic fact.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (citation omitted). Nevertheless, mere expectations or hopes are not protected against summary deprivation. It is imperative that the claimant alleging a property interest precisely identify the state law source of that interest.

The sole source of the property interest claimed by Mr. Felton is Ordinance 1987–2 which was enacted on January 6, 1987 and repealed on May 4, 1987. Mr. Felton has a property interest in the job security afforded by that ordinance only if Mr. Felton can enforce that ordinance under state law.

Because the ordinance had long since been repealed at the time the Commissioners failed to reappoint him, Mr. Felton is entitled to rely on the ordinance only if a property interest acquired as a result of the ordinance "vested" prior to the time that the ordinance was repealed. There are two ways that Mr. Felton might try to establish that the ordinance created a property interest that survived the ordinance's repeal: (1) Mr. Felton could try to show that Indiana law prohibits the repeal of benefits assigned by statute to public employees or (2) Mr. Felton could attempt to prove that the provisions of the ordinance became part of his contract with the County. Mr. Felton, however, can do neither.

Indiana law is manifestly clear that benefits given to public employees by legislative decree can be taken away by that same authority. As the Indiana Supreme Court said in *State ex rel. Yancey v. Hyde,* 129 Ind. 296, 28 N.E. 186, 187–88 (1891):

> Offices are neither grants nor contracts, nor obligations which cannot be changed or impaired. They are subject to the legislative will at all times, except so far as the constitution may protect them from interference.... 'Offices created by the legislature may be abolished by the legislature. The power that creates can destroy. The creator is greater than the creature. The term of an office may be shortened, the duties of the office increased, and the compensation lessened by the legislative will.'

(citations omitted). *See also Kirkpatrick v. King,* 228 Ind. 236, 91 N.E.2d 785, 788–89 (1950) ("[p]ublic officers have no property interest in their offices, or any right of property in the prospective compensation attached thereto") (citation omitted); *Corn v. City of Oakland City,* 415 N.E.2d 129, 133 (Ind.App.1981) (city judge who had served previous term in office, which had been created by city ordinance, and who had won Democratic primary for that office did not have vested right in office and office could be repealed by ordinance prior to general election). There is no provision of state law that caused Ordinance 1987–2 to vest rights in Mr. Felton in perpetuity. Once that ordinance was repealed all potential rights created by that ordinance were extinguished except for any independent contract rights the ordinance memorialized.

■ A statute in force at the time a contract is entered into may create certain contract rights which inure to the benefit of a public employee. Such was the case in *Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938),

where the United States Supreme Court held that under Indiana law a public teacher acquired lifetime tenure pursuant to a statute that had been expressly incorporated into the teacher's contract even though the provision of that statute that afforded the teacher tenure was subsequently repealed.

■ In this case the ordinance in question was not adopted until January 6, 1987, five days after Mr. Felton's January 1, 1987, reappointment to the position of veterans' service officer. Thus, the ordinance could not have been a part of any employment contract Mr. Felton had with the county but was rather a gratuitous gesture on the part of the county. Such unilateral gifts do not change the terms of an employment contract. *See, e.g., Hamblen v. Danners, Inc.,* 478 N.E.2d 926, 928 (Ind.App. 1985) ("[t]o convert employment at will to employment requiring good cause for termination, independent consideration supplied by the employee, which results in detriment to him and a corresponding benefit to the employer, must be given in return for permanent employment"). Because the protection afforded by the ordinance was not bargained for it did not become a part of Mr. Felton's employment contract and could not be relied upon by Mr. Felton following the ordinance's repeal.[3] Accordingly, defendants' motion for summary judgment with respect to Mr. Felton's due process claim is GRANTED.

### B. Party affiliation as a requirement of Felton's job

■ For the purpose of ruling on defendants' motion for summary judgment on Mr. Felton's political firing claim this court must assume that Mr. Felton would be able to prove at trial that he was fired for a political reason. Because the first amendment protects the right of government employees to engage in political discourse, a government employee can only be fired for a political reason if the government establishes that a vital governmental interest is advanced by the firing. *See Elrod v. Burns,* 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). At all times, "the burden is on the government to show the existence of such an interest." *Id.*

The government can carry that burden only by demonstrating "that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). The Seventh Circuit has expressed this test as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir. 1981), *cert. denied* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). In terms of the approach to be used to review whether the government has established a sufficient interest to uphold a political firing, it may also be noted that, "though a functional approach is now preferred to a definitional one, the descriptions 'policymaking' and 'confidential' accurately describe the vast majority of offices that fall within the realm of legitimate patronage." *Matlock v. Barnes,* 932 F.2d 658, 662 (7th Cir.1991), (*quoting Meeks v. Grimes,* 779 F.2d 417, 420 (7th Cir.1985)) (quotation marks omitted).

■ The defendants in this case have sought to identify facts that would implicate the above descriptions of what governmental positions are not covered by the

---

**3.** *Wells v. Auberry,* 476 N.E.2d 869 (Ind.App. 1985) does not change this court's conclusion. In *Wells* the Indiana Court of Appeals found that a regulation of the Marion County Sheriff's Department created a "vested right to the due process procedures afforded by" that regulation and that an officer in the Department "had a protected property right to continued employment at the rank" at which he was employed until such time as he had been afforded due process. *Id.* at 873. As in Mr. Felton's case the regulations at issue in *Wells* had been subsequently repealed. The difference between *Wells* and this case, however, is that the regulations in *Wells,* though later repealed, were still in force at the time the deprivation occurred. In contrast, the deprivation claimed by Mr. Felton occurred long after the ordinance he relies upon was repealed.

first amendment's protection against political firings. Defendant's effort on summary judgment has been made exceedingly difficult, however, by the fact that "the question of whether a job is policymaking or confidential is often factual." *Matlock*, 932 F.2d at 663. Thus, the issue of whether the position at stake falls within the exception to the first amendment's prohibition on political firings is not typically appropriately resolved on summary judgment.

Defendants, in their brief in support of their motion, offer an extensive list of "facts" concerning the nature of Mr. Felton's job including the observations that:

1. "as Veterans' Service Officer for Greene County [plaintiff] essentially ran the Veterans' Service Office,"

2. plaintiff "had his own secretary, prepared his own budget, and operated the office within the budget,"

3. plaintiff "was reappointed annually by the board of commissioners,"

4. plaintiff "applied for the job citing his experience in management as qualifications (sic),"

5. "the job of Veterans' Service Officer required management skills,"

6. "Felton was a specialist in his field ... and underwent annual recertification,"

7. "the Veterans' Service Officer was expected not only to keep abreast of changes in the law, but to advise veterans accordingly,"

8. "[p]laintiff conducted research on laws on various veterans' issues, and consulted with the Department of Veterans' Affairs over interpretation of rules,"

9. plaintiff's "involvement with the commissioners was minimal, [h]e would confer with them if problems came up, but otherwise ran the office on his own,"

10. plaintiff's "annual budget proposal contained proposed salaries both for himself and for the other two members of his office,"

11. plaintiff "would meet with the state deputy director for veterans' affairs twice a year,"

12. "[t]he job of Veterans' Service Officer involved counseling, instruction, and direction to veterans, their widows and survivors,"

13. "[p]laintiff would advise veterans on matters such as tax deductions or claims,"

14. plaintiff "once filed a grievance on behalf of a widow denied benefits," and

15. "[p]laintiff agrees that the new commissioners ... were entitled to count on his support."

*See* Defendants' Memorandum in Support at 2–4.

Defendants' submission, however, only highlights the fact-bound nature of the inquiry the defendants would have this court make on summary judgment and reflects the inappropriateness of resolving this dispute in summary fashion.

Initially, this court notes that in preparing their proffer defendants have relied almost completely on the deposition of Mr. Felton and Mr. Felton's statements therein which reflect on his own individual perception of his position. This narrow focus by the defendants has made it difficult for this court to follow the Seventh Circuit's mandate to focus on "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Tomczak v. City of Chicago*, 765 F.2d 633, 640 (7th Cir.1985), *cert. denied* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). Indeed, the whole of defendants' motion and supporting brief fail to come to grips with the issue of why political affiliation was important to the proper functioning of the Veterans' Service Office.

Moreover, this court cannot be sure that the snippets of deposition testimony extracted by the defendants and submitted in support of their motion accurately reflect the function of Mr. Felton's former position. Certainly the vague description that Mr. Felton "ran" the Veterans' Service Office sheds little or no light on whether political affiliation is an appropriate reason to fire him.

Defendants submit that, as veterans' service officer, Felton's duties included supervising "his own secretary" and another office employee, that his position required "management skills" and that Felton's "annual budget proposal contained proposed salaries both for himself and for the other two members of his office." It is true that the extent of an employee's supervisory status is a factor which may contribute to a finding that the employee held a policymaking job for which political qualifications are appropriate. *See, e.g., Matlock,* 932 F.2d at 664.

Nevertheless, the test the courts use to determine whether the first amendment protects against a particular dismissal is a functional one. This court does not find that the Seventh Circuit has given talismanic significance to terms describing specific job functions such as "supervisory," "reporting" or "budgeting," nor has the Seventh Circuit broadly stated that particular job titles such as "investigator," "supervisor" or "foreman" are automatically exempt from first amendment protection. Rather, the Seventh Circuit has made it clear that, in every case, a functional analysis will be undertaken to determine whether a particular government job is "merely ministerial" or whether it authorizes direct or indirect "meaningful input into government decisionmaking." *Matlock,* 932 F.2d at 664, 662 (citation omitted).

In this case the defendants describe the fact that Mr. Felton supervised a secretary and driver who also worked in the Greene County Veterans' Service Office but do not attempt to analyze why, in the context of Mr. Felton's job, this supervisory role resulted in meaningful input into government decisionmaking. Thus, defendants have failed to carry their burden of establishing that Mr. Felton's office performed functions which transcended the merely ministerial.

Similarly, defendants have listed plaintiffs job qualifications such as "experience in management" and "specialist in his field" without tying these qualifications to an argument as to why they are reflective of a position that requires meaningful input into decisionmaking. Without such a tie a list of job qualifications does not advance defendants' argument for summary judgment. This court also observes that defendants have not contended that political affiliation was ever considered a qualification for plaintiff's office in the past, *cf. Hudson v. Burke,* 913 F.2d 427, 432 (7th Cir.1990) (affirming defendants' motion for summary judgment and noting that plaintiffs "were [originally] hired because of their political affiliation"). Moreover, the qualifications that defendants have listed appear to be neutral qualifications that could be met irrespective of party affiliation.

■ Defendants further submit that Felton "prepared his own budget and operated the office within the budget." It does appear that Mr. Felton had some discretion in making expenditures; however, the extent of this discretion is unclear. Indeed, it is clear that Mr. Felton's discretion was limited by the necessity of having to consult with the commissioners before certain transfers of funds were permitted. Moreover, the mere prerogative to make proposals and requests for funds from a governing body without more is not the "meaningful" input into decisionmaking that will exempt a position from the first amendment's restrictions on political firings. If the ability to make recommendations was equated to policymaking the exception would certainly swallow the rule, for it is the rare employee who is not permitted to make recommendations to his superiors.

Moreover, there appears to be nothing about the day to day working relationship between the Veterans' Service Officer and the Commissioners that would make political affiliation an appropriate qualification for that office. The Seventh Circuit has recognized that "there are situations, especially in small offices where constant face-to-face contact is required, in which 'political animosity, while not a noble basis for discharging an employee, can in practice create a hostile work environment.'" *Matlock,* 932 F.2d at 665 (*quoting Meeks v. Grimes,* 779 F.2d at 423). In those situations the Seventh Circuit has said that, "it

would strain credulity to read the First Amendment or *Elrod* to require an elected official to work in constant direct contact with a person viewed as a political enemy." *Matlock*, 932 F.2d at 665 (*quoting Meeks*, 779 F.2d at 423). However, this exception to the prohibition on political firings is not applicable here as the defendants admit that Felton's "involvement with the commissioners was minimal. He would confer with them if problems came up, but otherwise ran the office on his own."

Defendants rely principally on *Bicanic v. McDermott*, 867 F.2d 391 (7th Cir.1989), and *Tomczak v. City of Chicago*, 765 F.2d 633 (7th Cir.1985), *cert. denied* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985), to support their argument that the County veterans' service officer qualifies as a position susceptible to discharge for political reasons. This court does not find, however, that the fact patterns in those cases are closely similar to the facts in this case.

In both *Bicanic* and *Tomczak* it is apparent that the discharged employee had far more absolute authority than the veterans' service officer in this case. In *Tomczak* the Deputy Commissioner of the Department of Water had "the second highest job in a large and vital city Department" in Chicago and his responsibilities "included the administration of a Bureau with 1,150 employees and an annual budget of about $40,000,000." *Tomczak*, 765 F.2d at 641–42. In *Bicanic* the discharged Administrator of Parks and Recreation for the City of Hammond, Indiana had authority (at the time he occupied his former position) to sign contracts for projects as large as "the construction of a new civic center." The $47,180 budget estimate for the Greene County Veterans' Service Office in calendar year 1988 pales in comparison.[4] Thus, this court may not summarily conclude, on the basis of these two cases and the fact that the veterans' service officer ran the Veterans' Service Office, that the position

of Greene County veterans' service officer is one for which political qualification is appropriate.

Instead, this court must analyze the discrete functions of the veterans' service officer to determine whether those functions "were susceptible to partisan political usage." *Hudson*, 913 F.2d at 433. As the Seventh Circuit recognized in *Tomczak*, "[e]lections often turn on the success or failure of the incumbent to provide [certain] services." *Tomczak*, 765 F.2d at 641. If the position involved is sensitive enough that failure in the office could have a significant political impact then political affiliation may be an appropriate criteria for the job.

In this case there is little doubt that the Veterans' Service Office dealt with issues that were of extreme importance to the persons the office served (veterans and their dependents). However, the defendants have offered no evidence that would indicate that it was likely that the Commissioners would be held accountable for the conduct of the Veterans' Service Office or its employees. There is no evidence of partisan "political division," *Hudson*, 913 F.2d at 432, surrounding the Greene County Veterans' Service Office. Moreover, Ind.Code § 10–5–1–11 places the Veterans' Service Officer "under the supervision of the [Indiana State] director of veterans' affairs" and authorizes the County Commissioners only to "appropriate the necessary funds" for the office. Thus, as a matter of state law it appears that accountability for the operations of the Greene County Veterans' Service Office lies with state government. On this record this court cannot find on summary judgment that the defendants have shown that the potential political impact on the Greene County Commissioners from Mr. Felton's work was sufficient to terminate him for political reasons.

---

4. Of course, it is undoubtedly the case that the budget for Greene County, Indiana is less than that of the City of Chicago and is probably less than the budget for the City of Hammond. It may also be that the Veterans' Service Office budget for Greene County takes up a sizeable chunk of that County's budget. However, the defendant's motion and supporting briefs fail to discuss the impact of the Veterans' Service Office allocation on the total County budget. In the absence of evidence on this point this court must conclude that the impact is not significant.

After reviewing the facts submitted in support of defendants' motion for summary judgment this court is unconvinced that defendants have carried their burden of demonstrating that there is no genuine issue of fact in dispute between the parties with respect to defendants' position that political affiliation is an appropriate requirement for the effective performance of his office. The facts with respect to the duties and responsibilities of plaintiff's office and the political importance of that office are in sharp conflict. Moreover, on summary judgment this court may not evaluate the evidence before it. If there is a genuine dispute over a material issue of fact Fed.R.Civ.P. 56 requires that summary judgment be denied. Accordingly, defendants' motion for summary judgment on the issue of whether political affiliation is an appropriate requirement for the effective performance of Mr. Felton's former office is DENIED.

**C. The defense of qualified immunity**

■ "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The County Commissioners seek summary judgment on the claims brought against them in their individual capacities based on this doctrine of "qualified immunity."

The principle behind the doctrine of qualified immunity is that in cases where "the law at the time [that a particular governmental decision was made] was not clearly

established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* There is a strong presumption in favor of the application of the doctrine, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "Immunity should be applied unless 'it has been authoritatively decided that certain conduct is forbidden.'" *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir.1991) (*quoting Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir.1987)).

In its most recent writing on the subject of qualified immunity the Seventh Circuit emphasized that, "[t]o prove the presence of a clearly established constitutional right, the plaintiff must point to 'closely analogous cases' decided prior to the defendants' challenged actions." *Upton*, 930 F.2d at 1212 (*quoting Rakovich v. Wade*, 850 F.2d 1180, 1205 (7th Cir.1988), *cert. denied* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)). Producing such cases was plaintiff's burden in response to defendants' motion for summary judgment on the subject of qualified immunity. Plaintiff, however, failed to carry that burden, and did not direct this court to any authority that would indicate that the relevant "legal norms ... were clearly established at the time of the challenged actions." *Wrigley v. Greanias*, 842 F.2d 955, 958 (7th Cir. 1988) (*quoting Wade v. Hegner*, 804 F.2d 67, 71 (7th Cir.1986)), *cert. denied* 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 105 (1988).[5]

Regardless, given the fact-sensitive nature of the functional analysis for deter-

---

**5.** The only case cited by the plaintiff as "similar" to the current fact situation was *Stegmaier v. Trammell*, 597 F.2d 1027 (5th Cir.1979). *Stegmaier* only helps plaintiff's case, however, it does not decide it. In *Stegmaier* the Fifth Circuit held that the circuit clerk in the Alabama state court system was not a "policymaker" because the clerk's functions were purely "ministerial." The clerk had *"no authority* to make policy decisions with regard to compilation of data and statistics; prescription of administrative and business methods, systems, forms, and records used in the clerk's office; preparation of

budgetary recommendations; investigation and recommendation regarding physical facilities; and procurement, distribution, and assignment of equipment, books, forms, and supplies." *Stegmaier*, 597 F.2d at 1038, (emphasis original). The authority to make "policy decisions" with respect to each of the above matters was reserved by statute to the administrative director of the courts. *Id.* In contrast, in this case it appears from the record before this court that the veterans' service officer had significant authority to compile data and statistics, prescribe business methods and forms to be used in

380

mining whether a position qualifies as an exception to the first amendment prohibition on political firings and given "[t]he failure of the courts to develop and apply a consistent set of principles concerning patronage dismissals," *Upton*, 930 F.2d at 1213, this court is convinced that plaintiff could not have found the cases to carry its burden even if plaintiff had tried. As Justice Scalia noted in a dissent joined in by three other justices in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 2756, 111 L.Ed.2d 52 (1990):

> interpretations of *Branti* [within the federal courts] are not only significantly at variance with each other; they are still so general that for most positions it is impossible to know whether party affiliation is a permissible requirement until a court renders its decision.

Justice Scalia's observation is apt as applied to the position of county veterans' service officer, a position concerning which this court has found a single reported case. Indeed, in that case the Second Circuit suggested that a "First Deputy Service Officer for the County Veterans Service Agency" would fall "at the policymaking end of the Erie County [New York] government spectrum." *Savage v. Gorski*, 850 F.2d 64, 65, 69 (2nd Cir.1988).

It is one thing to know the *Elrod–Branti* standard that governs political firings; it is quite another to be able to predict how it will be applied in a specific factual context. This court cannot require the County Commissioners of Greene County, Indiana to be more prescient than the federal judiciary has been to date. Defendant commissioners' motion for summary judgment on the issue of qualified immunity is GRANTED.

III. *Motion to Dismiss Individual Suit Against Lee Joe Stone*

On January 15, 1991 defendants filed a suggestion of death upon the record, not-

ing the death of defendant and former commissioner Lee Joe Stone. Mr. Stone had been sued in both his individual capacity and in his capacity as a commissioner of Greene County. With respect to the suit against Mr. Stone in his official capacity, Mr. Stone's successor has been automatically substituted as a party by the operation of Fed.R.Civ.P. 25(d)(1).

With respect to the suit against Mr. Stone in his individual capacity, however, the plaintiff had ninety days from the filing of the suggestion of Mr. Stone's death to make a motion for substitution. As the plaintiff has failed to make such a motion within the specified time frame, this court GRANTS the defendants' motion to dismiss the suit against defendant Stone in his individual capacity pursuant to the provisions of Fed.R.Civ.P. 25(a)(1).[6]

ALL OF WHICH IS ORDERED.

---

the Veterans' Service Office and to prepare budgetary recommendations regarding physical facilities and procurement. Thus, it would not have been unreasonable for defendants to have concluded after reading *Stegmaier,* that the position of veterans' service officer fell within the policymaker exception.

6. This holding is, of course, merely an alternative holding as this court has already determined that individual suits against the county commissioners are barred by the doctrine of qualified immunity.