**Neomi HERNANDEZ, Plaintiff–
Appellant,**

v.

**Jack O'MALLEY, individually and in his
capacity as State's Attorney of Cook
County, Illinois, and Chris Orozco, De-
fendants–Appellees.**

No. 96–1279.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1996.

Decided Oct. 21, 1996.

William T. Huyck (argued), Chicago, IL, for Plaintiff–Appellant.

Jack O'Malley, John J. Murphy (argued), Office of the State's Attorney of Cook County, Chicago, IL, for Defendants–Appellees.

Before EASTERBROOK, RIPPLE, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

In February 1986 Neomi Hernandez went to work for the State's Attorney of Cook County, Illinois. Hernandez is active in the Democratic Party and twice ran in its primary for the state house of representatives (most recently in March 1992). She has joined litigation to promote her faction's fortunes. E.g., *Hastert v. State Board of Elections*, 28 F.3d 1430 (7th Cir.1993); *Bonilla v. City Council of City of Chicago*, 809 F.Supp. 590 (N.D.Ill.1992). Hernandez was hired when Richard M. Daley, a Democrat, held the office. In 1990 Jack O'Malley, a Republican, was elected to a partial term, defeating Cecil Partee, who had been appointed State's Attorney when Daley became Mayor of Chicago. O'Malley ran for a full four-year term in 1992. Hernandez worked in the campaign of O'Malley's opponent, O'Malley was reelected, and Hernandez was fired in February 1993. She believes that these events are related and seeks relief under the first amendment (via 42 U.S.C. § 1983) and the *Shakman* consent decree in which several public offices, including the State's Attorney, promised to end patronage employment for most positions. O'Malley replied that Hernandez was one of 24 employees whose positions were eliminated when the Cook County Board cut his budget, and that her political affiliation and activities had nothing to do with the decision.

At the time of her discharge, Hernandez was officially a "Stenographer 5," but she was doing the work of a paralegal in the Consumer Fraud Division of the Public Interest Bureau. Her complaint alleged that she "has been primarily engaged in gathering information from the public, and other litigation support activities." The district judge concluded that "[t]his job description does not vary much ... from that of an assistant state's attorney except for court appearances." *Livas v. Petka*, 711 F.2d 798 (7th Cir.1983), holds that politics are a constitutionally permissible consideration when hiring and firing assistant state's attorneys. See also *Americanos v. Carter*, 74 F.3d 138 (7th Cir.1996). Because the district judge saw the policy-influencing role of attorneys and paralegals as identical (for prosecutorial policy is made in the office, not in the courtroom), he dismissed the § 1983 claim under Fed.R.Civ.P. 12(b)(6).

He also dismissed the *Shakman* claim against O'Malley and Chris Orozco (who actually made the decision to dismiss Hernandez) to the extent it sought relief from them in their personal capacities. Bernard Carey, the State's Attorney who signed the decree, could bind his successors only in their official capacities, the judge concluded. Hernandez protests this conclusion, but we think it sensible. O'Malley and Orozco are bound by virtue of the offices they hold; Fed.R.Civ.P. 65(d), which makes an injunction effective against successors in office, does not create personal (as opposed to official) liability, and neither does *Shakman v. Democratic Organization of Cook County (Cardilli)*, 533 F.2d 344, 351–52 (7th Cir.1976), which does not discuss the difference between personal and official capacities. The *Shakman* consent decree waives the limitations on *respondeat*

*superior* liability that might otherwise obstruct collection from public bodies. *Wzorek v. Chicago,* 906 F.2d 1180 (7th Cir.1990). Plaintiffs who pursue official-capacity litigation need not surmount a defense of immunity, because the organization is the real party in interest. *Leatherman v. Tarrant County,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). We cannot fathom why a person suing to enforce the *Shakman* decree might want to pursue the officeholders in their personal capacities, except for purposes of harassment, which is hardly a reason the court should approve.

The district judge held a bench trial of the *Shakman* claim and decided that the State's Attorney's Office was not in contempt of court, because Orozco had not considered Hernandez's politics when deciding which members of the staff to dismiss. Dan Collyer, an employee of the Office, saw a picture of Hernandez collecting tickets at a fund raiser for O'Malley's opponent, called her with a thinly veiled threat, and told the photographer: "I got the bitch." But Collyer did not play a role in the process leading to Hernandez's discharge five months later. After the County Board reduced the Office's budget by 5 percent, Orozco asked supervisors which positions on their staffs could be cut. Robert Lyons, supervisor of the Consumer Fraud unit, told Orozco that he had more staff than he needed: the Consumer Fraud group had one paralegal per lawyer, double the Office's usual ratio. Lyons recommended that Orozco fire Hernandez, the judge concluded, because she was carrying the lightest load of the unit's paralegal staff. Other employees who campaigned against O'Malley were retained. The district judge summed up: "Hernandez failed to prove ... that political considerations were a factor in her layoff."

Although Hernandez does not contend that this conclusion is unsupported by the record (or was influenced by trial error), she nonetheless believes that she is entitled to a second trial—this time, on the § 1983 theory, with a lower burden of proof (the preponderance standard, rather than the clear-and-convincing-evidence standard applicable to contempt proceedings), and before a jury rather than a judge. Although the district judge concluded that Hernandez had not established her claim even by a preponderance of the evidence, this finding was not essential to the judgment and therefore is not preclusive in the § 1983 action. See *Cohen v. Bucci,* 905 F.2d 1111 (7th Cir.1990). The principle that a jury's findings take precedence likewise prevents the findings from ending the case. See *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Hernandez asks us to direct the district judge to re-decide the contempt issue after final decision in the § 1983 claim, so that the judge may use the jury's findings, but the different burdens of proof, and the discretion a judge possesses in a contempt proceeding, mean that a jury's findings would not control the outcome of the *Shakman* claim. Any further proceedings on the § 1983 claim therefore do not require the reopening of what has been accomplished.

■ Like the district court, we begin analysis of the § 1983 theory with the question whether the complaint states a claim on which relief may be granted. Hernandez contends that O'Malley reacted adversely to her political affiliation, a contention that, if true, is within the scope of the rules established by *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); and *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). This poses the question "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295; see also *O'Hare Truck Service, Inc. v. Northlake,* —— U.S. ——, ——, 116 S.Ct. 2353, 2357, 135 L.Ed.2d 874 (1996). Perhaps the State's Attorney could do so, but the complaint is enough to put the employer to that demonstration.

Public prosecutors in Illinois are elected; no one doubts that states can make political affiliation a qualification for that job. We held in *Livas* that the prosecutor's assistants

also may be selected on political grounds, for in a large office they are the effective policy-makers for broad classes of matters. The district judge observed in this case that para-legals make recommendations to the lawyers, and they could filter the facts in a way that determines the lawyers' decisions. True enough—but they aren't *supposed* to do this. Paralegals are supposed to turn up facts and leave the decisions to the lawyers; that (in theory at least) is why lawyers need licenses and paralegals don't. A paralegal receives rather than gives directions. Many people, including the police, provide input that af-fects prosecutorial decisions. By deciding which crimes to investigate, and how thor-oughly, the police exercise more influence than the paralegals; does it follow that all police officers may be selected on the basis of political affiliation? At some point the chain of influence is so attenuated that the state's effort to demand political loyalty yields to the first amendment rights identified in *Elrod.* So we held in *Matlock v. Barnes,* 932 F.2d 658 (7th Cir.1991), which establishes that po-litical affiliation is not a permissible require-ment for the job of "legal investigator" in a city's law department, a position similar to that of paralegal.

O'Malley contends that it is unnecessary to compile a record because the inquiry under *Branti* is whether the powers of *the public office* include enough discretion that politics becomes a legitimate consideration. The proposition is accurate in the abstract. *Her-man v. Chicago,* 870 F.2d 400 (7th Cir.1989); *Bicanic v. McDermott,* 867 F.2d 391 (7th Cir.1989). One party can't appropriate a sensitive office by appointing a routineer who (in W.S. Gilbert's language from *H.M.S. Pin-afore*) "never thought of thinking for himself at all." Thus a new Water Commissioner may hire his own deputy, even if the incum-bent is a witless paper pusher; the office carries the potential for making discretionary political judgments, and higher-ups may in-sist that the slot be filled with someone who will use those powers, and whose political credentials therefore matter. *Tomczak v. Chicago,* 765 F.2d 633 (7th Cir.1985). From this it follows that *Branti* does not require a factual inquiry to see whether Hernandez's recommendations were followed; the least

aggressive paralegal is as open to replace-ment as the most effective, just as with assis-tant state's attorneys. But from this it also follows that the right question is whether political affiliation is an appropriate require-ment for a stenographer. For that is what Hernandez was: a Stenographer 5. Evident-ly the State's Attorney's Office does not pay much heed to organization charts. Flexibili-ty may be admirable, but when a public agency decides to match duties to personal skills and interests, rather than to job titles, it also surrenders the benefits of certainty in the *Elrod–Branti* inquiry. What the employe-e does becomes important. O'Malley's or-ganizational choices give force to this obser-vation made in *O'Hare Truck Service:* "the inquiry is whether the affiliation requirement is a reasonable one, so it is inevitable that some case-by-case adjudication will be re-quired even where political affiliation is the test the government has imposed." —— U.S. at ——, 116 S.Ct. at 2358.

■ Although the complaint survives the motion under Rule 12(b)(6), O'Malley is entitled to immunity from liability in dam-ages. Until the right in question has been "clearly established," courts do not demand that public officials dig into their pockets. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Of-ficials performing discretionary functions are immune from damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). O'Malley re-ceives immunity for the same reason the complaint states a claim: both the law and its application to the facts are uncertain.

A regimen of case-by-case balancing makes it hard to dismiss complaints and si-multaneously makes it hard to show that the right in question was "clearly established." Hernandez can point to *Matlock,* but O'Mal-ley can point to *Livas and Hudson v. Burke,* 913 F.2d 427 (7th Cir.1990), which held that political affiliation is an appropriate require-ment for "investigators" serving a city coun-

cil's finance committee. The investigators in *Hudson* have much in common with the paralegals in O'Malley's office-and for that matter with the "legal investigators" in *Matlock*. The district judge thought the paralegal position closer to the attorney in *Livas* than to the investigator in *Matlock*. That decision was premature, we have just held, but it shows the nature of the legal uncertainty and makes it impossible to say with confidence that "a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Drawing a stable line in *Elrod* cases has been difficult; even slight differences in the nature and context of the job can lead to opposite outcomes, as the contrast between *Matlock* and *Hudson* shows vividly. Contextual balancing tests should be worked out prospectively, rather than at the expense of public officials who guess wrong about future legal developments. *Greenberg v. Kmetko*, 922 F.2d 382, 384–85 (7th Cir.1991). So another panel recently concluded for another *Elrod–Branti* issue, see *Tarpley v. Jeffers*, 96 F.3d 921, 927–28 (7th Cir.1996), and its analysis is equally applicable today.

Hernandez has not asked for damages from the Office in the official-capacity aspect of the case (to which immunity does not apply), given the holdings of *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). What about the possibility of prospective relief, such as reinstatement? If Hernandez were suing O'Malley exclusively in his official capacity, we would need to decide whether, when making employment decisions, a State's Attorney in Illinois is part of the state or of the county that elects him and sets his budget—for a county is not "the state" under the eleventh amendment, *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890); *Moor v. County of Alameda*, 411 U.S. 693, 717–21, 93 S.Ct. 1785, 1799–1802, 36 L.Ed.2d 596 (1973), and an official-capacity suit is effectively against the body of which the defendant is an official, *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because of the individual-capacity claim in the complaint, however, Hernandez can take ad-

vantage of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and obtain prospective relief without regard to the proper classification of the State's Attorney for purposes of the eleventh amendment. We need not explore that subject further.

The judgment on the *Shakman* contempt claim is affirmed. The judgment on the § 1983 claim is affirmed to the extent it holds that Hernandez cannot recover damages. The remainder of the judgment is vacated, and the case is remanded for proceedings consistent with this opinion. The district court should permit any necessary discovery and decide whether in light of the analysis in this opinion Hernandez could be dismissed on account of political affiliation. If the answer to this question is no, and further discovery has altered the nature of the record from the time of the contempt proceedings, the judge should hold another trial to determine whether political affiliation led to the discharge. Because money damages are unavailable, Hernandez would not be entitled to a jury trial of this issue; and, for the same reason, if the record has not materially changed, the district judge should consider whether a new trial is necessary in light of findings already made in the contempt proceedings.