**Annmarie MILAZZO, Plaintiff,**

**v.**

**Donald P. O'CONNELL, Margaret Kostopulos, and Dawn Catuara, individually and as employees of the Office of the Circuit Court of Cook County, Defendants.**

**No. 95 C 5342.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 21, 1997.

John M. Beal, Chicago, IL, for Plaintiff.

Jerold Sherwin Solovy, Ada Sheryl Cooper, Jenner & Block, Teri Lynn Firmiss, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Annmarie Milazzo filed suit against defendants Donald P. O'Connell, Chief Judge of the Circuit Court of Cook County, Illinois; Margaret Kostopulos, Administrative Director of the Office of the Chief Judge; and Dawn Catuara, Administrative Assistant to the Chief Judge, for damages arising from Milazzo's termination as Human Resources Administrator[1] for the Circuit Court of Cook County. Milazzo worked as the Human Resources Administrator intially under Chief Judge Harry Comerford and then under Chief Judge O'Connell. Milazzo contends that shortly after O'Connell took office, defendants terminated her for lack of political sponsorship in violation of the First and Fourteenth Amendments, as well as Illinois state laws prohibiting retaliatory discharge.

Milazzo incorporated these allegations into a four count complaint. Count I alleged that Milazzo's abrupt termination violated the Office's Personnel Manual and the custom of informing an employee of complaints against her and providing her with the opportunity to be heard before termination. Count II claimed defendants terminated Milazzo due to her political affiliation in violation of the First Amendment. Count III charged that defendants further violated Milazzo's First Amendment rights by terminating Milazzo in retaliation for consulting with an attorney. Count IV reasserted the allegations in Count III, but was fashioned under state common law prohibitions against retaliatory discharge.

In a prior opinion, the Court granted defendants' motion to dismiss all counts of plaintiff's complaint with the exception of the First Amendment claim detailed in Count II. *Milazzo v. O'Connell*, 925 F.Supp. 1331 (N.D.Ill.1996). We found that Count II articulated a sufficient cause of action by alleging Milazzo occupied a purely ministerial, as opposed to confidential or policymaking, position protected from patronage firings under the First Amendment. *Id.* at 1343–44. The Seventh Circuit affirmed this court's judgment in an opinion released on January 13, 1997, stating that defendants failed to demonstrate that the nature of Milazzo's position justified her termination. *Milazzo v. O'Connell*, 108 F.3d 129, 132 (7th Cir.1997).

This matter is currently before the Court on defendants' motion for summary judgment on Count II of plaintiff's complaint. Defendants contend that the facts establish that political affiliation is an appropriate criterion for the confidential and policymaking position of Human Resources Administrator. Because we find that political affiliation is a proper consideration for the position of Human Resources Administrator, we need not address defendants' alternate argument that qualified immunity shields them from the damages sought in plaintiff's suit.[2] Accordingly, defendants' motion for summary judgment is granted.

---

1. The position of "Administrator of the Personnel Department" was retitled "Human Resources Administrator" in 1994. For purposes of clarity, this opinion will use the title "Human Resources Administrator" to refer to both positions.

2. Our decision here would *a fortiori* find that the defendants are protected by qualified immunity from any damage claims that remain in this case. However, we also note that Milazzo recently amended her complaint to include a prayer for prospective relief in addition to the punitive and compensatory damages and attorneys fees sought in the original complaint. While qualified immunity shields public officials sued for civil damages, the doctrine of qualified immunity as advanced by defendants would not bar an award of prospective relief. *See Hernandez v. O'Malley*, 98 F.3d 293, 297 (7th Cir.1996).

## LEGAL STANDARDS

Summary judgment is proper if the record reveals no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir.1994). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the evidence in a light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmovant's favor. *Cincinnati Ins.*, 40 F.3d at 150. However, if the evidence is merely colorable, or is not significantly probative, or merely raises "some metaphysical doubt as to the material facts", summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 261, 106 S.Ct. at 2516. In ruling on the motion, the court must be mindful of the jury's province, reserving credibility determinations and the weighing of the evidence for the trier of fact.

## FACTUAL BACKGROUND

We start by presenting the facts in the light most favorable to the plaintiff.[3] As this Court has set forth the facts giving rise to Milazzo's termination in our prior opinion, we will not repeat them here. Furthermore, while defendants do not concede to firing Milazzo for her political affiliations, defendants do not challenge plaintiff's ability to demonstrate this for purposes of their motion.[4] Accordingly, our discussion will be limited to those facts pertaining to the central inquiry in the case, the nature of the Human Resources Administrator position.

In her amended complaint, plaintiff describes her duties as implementing the personnel policies as adopted by Judge O'Connell (Pl.'s Amnd. Cmplnt. ¶ 10) and assisting the Executive Officer of the Office of the Chief Judge with budget and payroll account matters. Pl.'s Amnd. Cmplnt. ¶ 18. Milazzo states that she had "frequent contact with Chief Judge O'Connell performing various assignments and providing him with various information," and that defendant Catuara "relied heavily upon plaintiff." Pl.'s Amnd. Cmplnt. ¶ 13–14. Milazzo was responsible for "handling the payroll for the Office of the Chief Judge, maintaining the personnel files of the employees of the Office of the Chief Judge, recording the personnel actions taken by the supervisors of the various units of the Office of the Chief Judge, processing the hiring of new employees in the Office of the Chief Judge and assisting in the preparation of the budget of the Office of the Chief Judge by participating in the preparation of the forms and other documents that must be prepared to support the budget decisions made by the Chief Judge." Pl.'s Facts ¶ 7. Milazzo contends, however, that she exercised no discretion or independent authority

---

**3.** The facts are derived from statements that the parties filed with this Court under the Northern District of Illinois' Local General Rule 12(M)–(N). Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to affidavits, parts of the record, and other supporting material relied upon to support the facts set forth." Rule 12(M)(3). Defendants's statement is cited as "Defs. Facts ¶——." Similarly, Rule 12(N)(3)(a) requires the non-moving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Milazzo's response is cited as "Pl.'s Facts ¶——." Rule 12(N)(3)(b) authorizes the non-moving party to submit a statement of "additional facts that require the denial of summary judgment"; under Rule 12(M), the moving party may then submit a reply to the non-moving party's additional facts.

Milazzo's statement of additional facts is cited as "Pl.'s Add'l Facts ¶——.", and the defendants' reply is cited as "Defs.' Resp. Add'l Facts ¶——." All properly supported material facts set forth in either party's statements are deemed admitted unless properly controverted. See Local Rule 12(M) and (N)(3)(b); *see also Flaherty v. Gas Research Institute*, 31 F.3d 451, 453 (7th Cir. 1994). Moreover, the mere denial of a particular fact without specific references to affidavits, parts of the record, and other supporting materials is insufficient, and, where a properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted. *Flaherty*, 31 F.3d at 453.

**4.** Milazzo need not prove that the sole reason for defendants' unfavorable action was political affiliation, merely that political affiliation was one factor in the dismissal. *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981).

in executing these tasks. Milazzo states she "supervised the testing of applicants for clerical and administrative positions, and conducted interviews for many of the applicants for clerical and secretarial positions." Pl.'s Aff. ¶ 4. Milazzo admits compiling the Office's Personnel Manual, but denies any input into the formulation of such policy. In addition, Milazzo denies playing a role in the substantive personnel actions taken within unionized and nonunionized Circuit Court departments.

Milazzo also offers the affidavit of Thomas F. Cunningham, former Executive Officer in the Office of Chief Judge Comerford. Cunningham states that Milazzo was responsible for maintaining personnel files, preparing correspondence, and preparing the Annual Budget Request based upon information supplied by others. Cunn. Aff. ¶ 4. Cunningham testifies that Milazzo could neither hire nor fire employees, nor enter into contracts on behalf of the Office. Cunn. Aff. ¶ 5. Similarly, Donna Sass, Milazzo's former administrative assistant, describes Milazzo's responsibilities as supervising the administrative functions of the Human Resources Department. Sass Aff. ¶ 6. Finally, Milazzo presents the resignation letter of her immediate successor, Christina Hernandez. The letter indicates Ms. Hernandez resigned from the position of Human Resources Administrator to seek a position with more authority and discretion.

In contrast to Milazzo's limited autonomy, Bruce Wisniewski, the current Human Resources Administrator, exercises broad discretionary authority in Milazzo's former position. Prior to his appointment as Human Resources Administrator, Wisniewski served as an Administrative Assistant in the Office of the Chief Judge and was responsible for labor relations and collective bargaining. As Human Resources Administrator, Wisniewski draws upon his prior experience and undertakes the responsibility for labor relations and collective bargaining for the Office of the Chief Judge. Wis. Aff. ¶ 15. Wisniewski serves as one of five members of a management team responsible for assisting Judge O'Connell in running the operations of the Office of the Chief Judge. Wis. Aff. ¶ 3. Wisniewski advises Judge O'Connell and the senior management staff of six other Departments of the Circuit Court of Cook County regarding personnel, employment, and labor issues. Wis. Aff. ¶ 4.

Wisniewski implements current personnel policies, as well as recommends and develops new personnel policies. Wis. Aff. ¶ 5, 6. In doing so, Wisniewski investigates infractions of personnel rules, makes recommendations, and oversees the corrective action. Wis Aff. ¶ 10. Wisniewski conducts interviews and makes recommendations for clerical and administrative positions, conducts screening interviews for law clerks, and coordinates the summer intern hiring program. Wis. Aff. ¶ 8, 11.

In addition, Wisniewski supervises the payroll, and monitors vacancies in payroll and payroll expenditures. More than simply preparing forms used in submitting budget requests, Wisniewski drafts those portions of the budget driven by changes in staffing. Wis. Aff. ¶ 12. Wisniewski assists the Department Heads of the six other Departments of the Circuit Court of Cook County in determining staffing needs as part of their budget preparation process. Wisniewski represents the Office of the Chief Judge in dealing with staff members of the President of the Cook County Board of Commissioners concerning fiscal and personnel issues, and with regard to other Departments of the Circuit Court of Cook County. Wis. Aff. ¶ 7, 13.

Furthermore, while neither party referred to it in arguing this motion, the Personnel Manual, which plaintiff assisted in drafting, demonstrates the expansive nature of the Human Relations Administrator's position. The Manual makes the Human Resources Administrators an official step in the Office's grievance procedures, stating that if an employee is dissatisfied with her supervisor's handling of a grievance, the employee should notify the Human Resources Department for a response within ten work days. The Human Resources Department conducts all exit interviews, responds to all employee requests for transfers of assignments, has the right to review employee's medical releases and can require the employee to submit to an examination by the Employer's doctor. In addi-

tion, department supervisors are required to notify the Human Resources Department of an employee's break in service, to forward written reprimands to the Human Resources Department, and to forward requests for membership in professional organizations. The Manual directs employees to turn over any compensation for jury duty to the Human Resources Department, to apply to the Human Resources Department to receive credit for prior service, to inform the Human Resources Department of dual employment, and to direct all requests to examine their personnel file to the Human Resources Administrator in writing.

## LEGAL ANALYSIS

We must determine whether defendants have enunciated a compelling reason to justify terminating Milazzo for her lack of political sponsorship. Two Supreme Court cases establish the guidelines to evaluate the legality of governmental employment decisions based upon political affiliations. Generally, a public employer may not terminate an employee for exercising her rights under the First Amendment. *Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976). However, political affiliation may be an appropriate employment consideration for confidential and policymaking positions. *Branti v. Finkel,* 445 U.S. 507, 517–18, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980). In *Elrod v. Burns,* the Supreme Court announced that a public employer's decision to terminate employees occupying policymaking or confidential positions was justified "to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration...." *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687. The Supreme Court abandoned strict reliance upon the labels of policymaker and confidential employee in *Branti v. Finkel,* relying instead upon a more functional analysis. *Branti,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The relevant question under *Branti* is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office involved. *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95.

The Seventh Circuit further refined the *Branti* formula, stating that "the test is whether the position held by the individual authorizes either directly or indirectly meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981). Such terminations are justifiable because "a public agency would be unmanageable if its head had to appoint or retain ... members of the opposite party ... in positions of confidence or positions in which they would be making policy or what amounts to the same thing, exercising discretion in the implementation of policy. He could not trust the occupants of the confidential positions to keep his secrets or the occupants of the policymaking positions to carry out his policies with fidelity and diligence." *Wilbur v. Mahan,* 3 F.3d 214, 217 (7th Cir. 1993).

For example, in *Bicanic v. McDermott,* the Seventh Circuit ruled that the plaintiff's former position of coordinator of the municipal park and recreation program was inherently political in nature. 867 F.2d 391, 393 (1989). As coordinator, plaintiff had been responsible for organizing and coordinating the park program, preparing the budget, interviewing candidates for employment and recommending who should be hired, and negotiating construction contracts. *Bicanic,* 867 F.2d at 393. The court held that the uncontested facts demonstrated that the position allowed for input into policymaking decisions. *Id; see also Tomczak v. City of Chicago,* 765 F.2d 633, 642 (1985) (responsibility for implementing policies, and planning and recommending budget requirements are indicative of a policymaking position).

The position need not be the final word in the decisionmaking process to constitute a policymaking position; it is sufficient that the position afforded input into such decisionmaking. *Warzon v. Drew,* 60 F.3d 1234, 1240 (7th Cir.1995) (focusing upon input as opposed to final control). Furthermore, positions that do not carry policymaking responsibilities, but require political loyalty and confidentiality are similarly subject to patronage firings. *See Soderbeck v. Burnett*

*County,* 752 F.2d 285, 288 (1985) (employer may require position of confidential secretary to be filled with political ally).

Initially, Milazzo contends that Wisniewski's testimony regarding the Human Resources Administrator's position is wholly conclusory. Without discussing the merit of this contention, we note that Wisniewski amended his affidavit to include specific examples of interviewing and hiring employees, suggesting and implementing personnel policies, recommending the creation of new positions, participating in disciplinary investigations, and participating in budget requests by determining positions submitted for reclassification. See Wis. Amnd. Aff. We find that this evidence demonstrates that the position of Human Resource Administrator was a policymaking and confidential position. Wisniewski served as an advisor to Judge O'Connell, and brought pertinent information regarding personnel and budgetary needs to the table. He was responsible for a wide range of employment issues and handled the Office's labor relations and negotiations. Such a position clearly authorizes meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation.

Milazzo does not seriously contest that Wisniewski performs such tasks, nor does she challenge his authority to do so. Rather, she argues that the evidence demonstrates that neither she, her predecessor, nor her immediate successor performed the tasks or were granted the autonomy that Wisniewski is afforded in the position of Human Resources Administrator. Milazzo contends that such evidence defeats defendants' motion for summary judgment, because it raises a genuine issue of material fact as to the true nature of the position. We disagree, and find that the Seventh Circuit precedent dictates the opposite conclusion. See, *Tomczak v. City of Chicago,* 765 F.2d 633 (1985); *Hernandez v. O'Malley,* 98 F.3d 293 (1996).

In determining whether a position is susceptible to patronage dismissal, the Court must focus upon the nature of the position itself, not a particular employee's performance of the position. *Hernandez v. O'Malley,* 98 F.3d 293, 296 (7th Cir.1996).

Accordingly, a position may be considered policymaking or confidential despite the fact that the previous officeholder performed fewer or less important functions than the current officeholder. *Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.1985). Such a policy prevents one political party from appropriating "a sensitive office by appointing a routineer who (in W.S. Gilbert's language from H.M.S. Pinafore) 'never thought of thinking for himself at all.' Thus a new Water Commissioner may hire his own deputy, even if the incumbent is a witless paper pusher; **the office carries the potential for making discretionary political judgments**, and higher-ups may insist that the slot be filled with someone who will use those powers, and whose political credentials therefore matter." *Hernandez,* 98 F.3d at 296.

The Sixth Circuit recently applied this "potential power" rationale under circumstances similar to those presented by Milazzo, and held that a new judge executive was entitled to consider political affiliation in firing his purchasing agent and chief financial officer. *Blair v. Meade,* 76 F.3d 97 (6th Cir.1996). The court held that "[t]he fact that the defeated judge executive had [one of the plaintiffs] perform ministerial rather than policymaking tasks does not change the conclusion that the inherent nature of his job made him particularly well-suited to aid in policymaking." *Id.* at 101. Therefore, the court ruled that the new judge executive was entitled to fill the plaintiffs' former positions with loyal employees capable of policymaking. This Court agrees with the Sixth Circuit and finds its holding to be consistent with Seventh Circuit law.

In the case at bar, both parties acknowledge that the Human Resources Administrator's office compiled extensive data regarding all aspects of personnel needs and employee histories. In fact, Milazzo admits that she interviewed candidates for employment. This activity automatically leads to subjective judgments concerning a job candidate's overall presentation and ability. The Court's careful review of the undisputed evidence discloses that the Human Resources Administrator's position is particularly well suited

to aid the Chief Judge in decisions regarding the expansion of staff, budget, personnel, labor relations, and hiring and firing. Thus, we cannot accept Milazzo's contention that Judge O'Connell is prohibited from filling the position of Human Resources Administrator with an individual qualified to engage in tasks not granted to Milazzo. Rather, we find that the office was always endowed with the "potential for making discretionary political judgments." *Hernandez,* 98 F.3d at 296; *see also Hudson v. Burke,* 913 F.2d 427 (7th Cir.1990) (granting defendants' motion for summary judgment where city finance committee chairman utilized investigators to provide subjective input into policy decisions, even though previous finance chairman filled the positions with ministerial employees); *Kline v. Hughes,* 1997 WL 151312 (S.D.Ind., Mar.5, 1997) (granting defendants' motion for summary judgment despite plaintiff's contention that both she and her predecessor performed purely ministerial tasks). Defendants' motion for summary judgment on Count II of plaintiffs' amended complaint is granted.

The undisputed facts establish that Ms. Milazzo's former Human Resources Administrator position has inherent policymaking potential. Therefore, this Court concludes that political affiliation is a reasonable requirement of the Human Resources Administrator position and that Chief Judge O'Connell did not violate Ms. Milazzo's First Amendment rights when he terminated her employment with the Circuit Court of Cook County. Ms. Milazzo's job termination is unfortunate, but does not violate the Constitution.