Annmarie **MILAZZO**, Plaintiff–Appellant,

v.

Donald P. **O'CONNELL**, Margaret Kostopulos and Dawn Catuara, individually and as employees of the Office of the Chief Judge of the Circuit Court of Cook County, Defendants–Appellees.

No. 97–4217.

United States Court of Appeals, Seventh Circuit.

Submitted June 4, 1998.[*]

Decided July 29, 1998.

As Modified on Denial of Rehearing and Suggestion for Rehearing En Banc Aug. 31, 1998.

---

[*] This successive appeal has been submitted to the original panel under Operating Procedure 6(b). After examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f).

John M. Beal, Chicago, IL, for Plaintiff–Appellant

Barry Levenstam, Jerold S. Solovy, Jenner & Block, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, CUMMINGS and CUDAHY, Circuit Judges.

PER CURIAM.

In September 1995 Annmarie Milazzo filed a four-count complaint with jury demand against Donald P. O'Connell, Chief Judge of the Circuit Court of Cook County, Illinois, and two members of his staff. The district court granted defendants' motion to dismiss Counts I, III and IV but refused to dismiss Count II, which alleged that plaintiff's employment was terminated in violation of the First and Fourteenth Amendments because of her lack of political sponsorship.

Plaintiff Annmarie Milazzo was Human Resources Administrator in the Office of the Chief Judge from 1990 to 1995. In addition to Judge O'Connell the following defendants were named: Margaret Kostopulos, Administrative Director (or Acting Administrative Director) of the Office of the Chief Judge of that court, and Dawn Catuara, an administrative assistant to Chief Judge O'Connell.

In 1990 plaintiff became Administrator of the Personnel Department of the Circuit Court. In 1994 the Personnel Department was renamed the Human Resources Department. Plaintiff asserted that her duties were to implement the personnel policies adopted by the Chief Judge and his immediate staff. In December 1994, Judge O'Connell succeeded Judge Harry G. Comerford as Chief Judge of the Circuit Court. Later that month plaintiff met with Judge O'Connell and discussed the activities of herself and her department. From that point through March 1995 she had frequent contacts with Judge O'Connell.

On January 30, 1995, defendant Catuara became administrative assistant to Judge O'Connell. Plaintiff alleges that for several months thereafter defendant Catuara "relied heavily on plaintiff" but also gave her contradictory instructions and criticized her for "taking actions that defendant Catuara had explicitly directed plaintiff to perform, but which resulted in problems." In February 1995 Judge O'Connell allegedly directed defendant Catuara to eliminate testing and interviewing procedures for prospective employees in order to hire new employees based upon their political sponsorship. Defendant Catuara criticized plaintiff because Catuara was embarrassed when unable to answer questions by Judge O'Connell about the political sponsorship of certain applicants for the summer job program and falsely blamed her own inadequacies on plaintiff. In July 1995 defendant Catuara told plaintiff that Judge O'Connell decided to transfer plaintiff to a lesser position, resulting in a $14,000 annual salary reduction.

On July 17, 1995, plaintiff's attorney contacted the Chief Judge's office about her demotion or reassignment and was told by defendant Kostopulos that there would be no reconsideration. The next day plaintiff met with Kostopulos and told her she was accept-

ing the lesser position under protest. However, later the same day Kostopulos called plaintiff and said that Judge O'Connell wanted to know what "under protest" meant and whether she would accept the new position "without reservations." Although plaintiff accepted these terms, the next day she received a letter from Kostopulos informing plaintiff that her position was terminated that day without an opportunity to be heard.

In September 1995 plaintiff filed her four-count complaint and the following April Judge Castillo granted defendants' motion to dismiss Counts I, III and IV but denied the motion as to Count II and also denied the motion as to qualified immunity under Count II. According to that Count, defendants' employment practices depended on the political sponsorship of an employee, and merit-testing procedures were abolished. Defendants supposedly based all personnel decisions predominantly on the basis of political sponsorship and plaintiff was terminated because of her lack of that sponsorship. In its opinion, the district court pointed out that under *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, a public employer's decision to terminate an employee on the ground of political affiliation infringes her First Amendment rights unless the defendant can demonstrate that the dismissed employee occupied a policymaking or confidential position. 427 U.S. at 367, 96 S.Ct. 2673. Therefore the motion to dismiss Count II was denied. We affirmed. 108 F.3d 129 (1997).

In June 1997 plaintiff filed an amended complaint which repeated many of the allegations of Count II of her original complaint. Thereafter, in paragraphs 28 through the termination of the amended complaint, plaintiff alleged as follows:

28. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 32[sic], above.

29. Defendant O'Connell, acting with the assistance of defendants Catuara and Kostopulos, employed a practice of hiring, re-assignment, promotion, and termination in the Office of the Chief Judge in which the necessary and predominant criteria for hiring, promotion, re-assignment or pro-

motion was the political sponsorship of an employee.

30. As set forth in paragraph 15, above, merit testing procedures were abolished by defendant O'Connell.

31. Before taking any personnel action, defendant O'Connell, with the frequent assistance of defendants Catuara and Kostopulos, determined who the political sponsor of an employee was, and made all personnel decisions based predominantly on that consideration.

32. Plaintiff Milazzo had no political sponsor. For several months after Judge O'Connell became Chief Judge and after defendant Catuara became his assistant, plaintiff was told she was doing a good job, because her expertise was needed while defendants O'Connell and Catuara familiarized themselves with the office. Once they had done so, plaintiff became expendable because she did not have political sponsorship, and defendants proceeded to demote and/or terminate her for her lack of political sponsorship.

33. Defendants therefore demoted and/or terminated plaintiff in violation of her rights under the First and Fourteenth Amendments to the Constitution of the United States not to have her employment terminated due to her lack of political affiliation.

34. As a direct and proximate result of the acts and omissions of defendants, plaintiff has suffered and will continue to suffer monetary losses, emotional distress, and embarrassment and humiliation.

35. Defendants acted with evil intent and callous indifference to the rights of plaintiff Milazzo.

WHEREFORE, Plaintiff Annmarie Milazzo prays that this Court:

A. Find that defendants O'Connell, Catuara, and Kostopulos are guilty of and liable for the deprivation of plaintiff's First and Fourteenth Amendment rights.

B. Enter a judgment in plaintiff's favor and against defendants O'Connell, Catuara, and Kostopulos; order plaintiff reinstated to her position as Human Resources Administrator in the Office of the Chief Judge; and award plaintiff:

I. Compensatory damages as shall be proven at trial;

II. Punitive damages as shall be proven at trial;

III. Plaintiff's attorney's fees herein pursuant to Title 42, U.S.C. § 1988;

IV. Plaintiff's costs herein; and

V. Such further relief as the Court deems just and proper.

In October 1997 Judge Castillo handed down his second Memorandum Opinion and granted defendants' motion for summary judgment on the amended complaint. He concluded that political affiliation was a proper consideration for the position of Human Resources Administrator, resulting in this second appeal.

Plaintiff now contends that the facts did not show that she was a confidential and policymaking employee. Judge Castillo rejected plaintiff's arguments that the nature of the position was administrative and that only after this lawsuit was filed did defendants give the Human Resources Administrator position additional duties "in a transparent attempt" to endow that office with duties that could be characterized as policymaking and confidential in order to prevail in this case.

As plaintiff has shown, she was not terminated until after she consulted an attorney about her pending demotion or reassignment. Shortly thereafter she received the letter stating that her employment was terminated.

In its first opinion in this case, the district court held that plaintiff's claim that she was fired because of her political affiliation in violation of her First Amendment rights stated a claim because it was unclear that "any reasonable government official would have believed that Milazzo held a position for which political loyalty was required." Consequently the court refused to hold that defendants had qualified immunity under Count II of the original complaint. We affirmed. 108 F.3d 129. After we affirmed the district court's first judgment, the matter came before Judge Castillo again on defendants' mo-

tion for summary judgment as to plaintiff's amended complaint which elaborated on the original Count II. In its opinion granting that motion, the district court concluded that political affiliation was a proper consideration for the position of Human Resources Administrator, so that summary judgment for defendants was warranted.

On the remand, plaintiff contended that she exercised no discretion or independent authority in executing her tasks of "handling the payroll for the Office of the Chief Judge, maintaining the personnel files of the employees of the Office of the Chief Judge, recording the personnel actions taken by the supervisors of the various units of the Office of the Chief Judge, processing the hiring of new employees in the Office of the Chief Judge and assisting in the preparation of the budget of the Office of the Chief Judge by participating in the preparation of the forms and other documents that must be prepared to support the budget decisions made by the Chief Judge."[1] Milazzo did supervise the testing of applicants for clerical and administrative positions and conducted interviews for new applicants for clerical and secretarial positions. While she compiled the Office's Personnel Manual, she denied any input into the formulation of policy for that Manual and denied "playing a role in the substantive personnel actions taken within unionized and nonunionized Circuit Court departments."[2]

Plaintiff also offered affidavits showing the limitations of her position as supervisor of the administrative functions of the Human Resources Department. She could neither hire nor fire employees nor enter into contracts on behalf of the Department. Her immediate successor resigned "to seek a position with more authority and discretion."[3]

The district judge noted that the present Human Resources Administrator exercises broad discretionary authority. The court observed that the current Personnel Manual demonstrates the expansive nature of the present Human Resources Administrator. In addition, the district court relied on the Personnel Manual of the Human Resources Department as demonstrating "the expansive

1. Second memorandum opinion and order, pp. 4–5.

2. *Ibid.* p. 5.

3. See note 2.

nature of the Human Relations Administrator's position."

Judge Castillo concluded that "The undisputed facts establish that Ms. Milazzo's former Human Resources Administrator position has [now] inherent policy making potential" and that political affiliation is a reasonable requirement of that position, so that plaintiff's job termination did not violate the Constitution.[4] But that is not the proper inquiry. The true question is whether her termination from the position as it was in July 1995 was improper. Sufficient facts have been set forth in the amended complaint to show that a jury should have been permitted to decide this question. If it finds that political affiliation was not a necessary requirement for the Human Resources Administrator or that defendants added responsibility to that position requiring Democratic affiliation only after this suit was filed, recovery would be warranted. *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574; *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547; *Illinois State Employees Union v. Lewis*, 473 F.2d 561 (7th Cir.1972), *certiorari denied*, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590. Plaintiff has identified to this Court several respects in which (she claims) defendants have done just that. She says she can prove that defendants suddenly gave the position far broader policy powers than it had possessed during her own tenure and those of her predecessor and immediate successor.

It is true that the mere fact that the incumbent in a position was not entrusted with policy-making authority does not preclude inquiry into whether the position itself has "the potential for making discretionary political judgments." *Hernandez v. O'Malley*, 98 F.3d 293, 296 (7th Cir. 1996). But by producing evidence suggesting that defendants changed the position's responsibilities, plaintiff has taken her case beyond the ambit of this principle. If the plaintiff's case be proved, then defendants fired her from a position that had never (at least in recent

memory) had policy-making responsibilities, then added such powers to the job in an attempt to legitimize the firing. In these circumstances, plaintiff has shown to warrant a jury trial.

Reversed and remanded; pursuant to Circuit Rule 36, the case is to be assigned to a different judge on remand.

CUDAHY, Circuit Judge, concurring in the result.

I do not believe that Judge Castillo misconceived the applicable law nor did he fail to make "the proper inquiry," as the majority asserts. He did not find, as the majority suggests, that the duties of the current Human Resources Administrator were dispositive; instead he relied on the present scope of the position as one indicator of the job held by Milazzo. *See*, District Court Opinion at 12. ("Rather, we find that the office was *always* endowed with the potential for making discretionary political judgments.") (emphasis added).

I believe, however, that there may be genuine issues of fact—particularly whether political affiliation was an appropriate criterion for the position of Human Resources Administrator. I therefore concur in the result.